378 So.2d 297 (1979)
Vicki NEWTON a/K/a Vicky Ann Newton, Appellant,
v.
STATE of Florida, Appellee.
No. 78-490.
District Court of Appeal of Florida, Fourth District.
November 28, 1979.
Rehearing Denied January 30, 1980.
*298 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff and Wilbert Stevenson, Jr., Asst. Public Defenders, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Max Rudmann, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Chief Judge.
Appellant was charged with possession of heroin. After denial of her motion to suppress she pled nolo contendere reserving the right to appeal this unfavorable ruling.
The facts adduced at the suppression hearing revealed that the police were involved in an undercover purchase of narcotics at a certain residence. On a prearranged signal from the undercover agents, a surveillance team entered the house. While agents were arresting one, Timmons, who had transacted a drug sale in the living room, another officer was ordered to check the remainder of the house for other persons. This practice is characterized by police as securing the house  a method used to insure the safety of investigating officers. While going through the bedrooms one of the officers saw an open purse on a bed and observed tinfoil packets of suspected narcotics in plain view.
Appellant contended on motion to suppress that the police had no right to be in the bedroom where the contraband was found because the search of the bedrooms was not incident to the arrest of Timmons in the living room. The state's position was that the police had a right to make a "protective sweep"[1] of the house to determine if there were any other persons present who might constitute a threat to the safety of the officers. The "protective sweep" procedure has been approved in several recent *299 cases.[2] These cases, however, confine such "protective sweeps" to situations where the police have reasonable grounds to believe their security may be jeopardized by others on the premises.
We must concede that a protective sweep of premises when an arrest is taking place would seem the circumspect thing to do for the protection of the officers involved. However, sensible as that may seem, such a protective measure is only allowable when the officers have some reasonable grounds to suspect additional persons may be present. It cannot be justified routinely. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), holds that, while there is ample justification for a search of the arrestee's person and the area within his immediate control, "[t]here is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs... ." Supra 762, 89 S.Ct. 2040. In order to justify an extension of the search to other rooms, be it ever so cursory, there must be some exigent circumstances constituting the reasonable grounds therefor. As the court stated in United States v. Bowdach, 561 F.2d 1160 (5th Cir.1977):
The law in this circuit holds that police officers have a right to conduct a quick and cursory check of a residence when they have reasonable grounds to believe that there are other persons present inside the residence who might present a security risk. This is true whether the initial arrest of the defendant was made inside or outside the residence. McGeehan v. Wain[w]right, 526 F.2d 397 (5th Cir.1976); United States v. Smith, 515 F.2d 1028 (5th Cir. 1975). It should be noted that the purpose of this cursory search is to check for persons, not things, and the search is only justified when it is necessary to allow the police officers to carry out the arrest without fear of violence. The exigent circumstances presented by this reasonable fear of violence distinguishes this factual setting from Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), in which the Supreme Court struck down unnecessary extended searches incident to lawful arrests. The district court found that the police officers reasonably feared for their safety. The defendant, along with Townsend and Jacobson, were alleged to be members of the `Cravero gang' which was the subject of an extended federal and state investigation at this time. The leader of this gang, Rick Cravero, has since been convicted of murder and importation of narcotics. In his published opinion, Judge Norman Roettger concluded that:
`The search of defendant's apartment in the instant case clearly qualifies as a security search. Although defendant was placed under arrest outside the apartment building, the police officers on the scene reasonably feared that other individuals still remained inside the building and that these individuals posed a threat to their safety and the safety of the neighbors. The scope of the search of the apartment was no broader than what was minimally necessary to protect the officers from the perceived danger. Although the security search ultimately revealed that there were no other dangerous individuals on the premises, the determining factor as to the legality of a search is the reasonable perceptions of the officers prior to entry, not what is actually found therein.'

United States v. Bowdach, 414 F. Supp. 1346, 1352 (S.D.Fla. 1976). Nothing in our search of the record reveals anything which might cause us to disagree with Judge Roettger's conclusion. Consequently, *300 we hold that the search of the defendant's apartment was proper, and once legally inside the apartment, the shotgun, which was in plain view, was subject to seizure. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Supra 1168-1169.
In United States v. Hobson, 519 F.2d 765 (9th Cir.1975), the Court said:

Chimel was intended to prevent officers from using an arrest as a pretext for ransacking a defendant's house in the search for evidence. Clearly, where the house is reputed to contain an arsenal of weapons and people who know how to use them and have expressed an intent to do so, some protective measures are in order. Supra at 776.
Finally, some examples of exigent circumstances justifying a protective sweep were pointed out in United States v. Mangeri, 451 F. Supp. 73 (S.D.N.Y. 1978):
Thus unless there are exigent circumstances which would reasonably indicate to the agents that they may be in danger or that there are others in the apartment who may be destroying evidence, there is no exception to the warrant requirement of the Fourth Amendment for cursory security searches. While the Second Circuit Court of Appeals cases have not discussed what `exigent' circumstances would allow such a search, several cases in other circuits are helpful on this point. `Exigent' circumstances to justify such security searches have been upheld, for example, where the agents have information that the individual arrested is travelling with other armed accomplices, where the agents have reason to believe other suspects were in the apartment, where the agents have broken down the door after being refused admittance and have heard scurrying in the background or flushing of toilets, or where they have seen evidence being destroyed. Supra 77-78.
The necessity for exigent circumstances to justify a protective sweep was upheld in Grant v. State, 374 So.2d 630 (Fla. 3rd DCA 1979), wherein a protective sweep was made of premises involving a murder scene.
In the present case the police knew of no articulable facts upon which to base a conclusion that there were, or might be, other persons present in the house. The officers testified that they searched the remainder of the house because:
It's standard procedure, due to the amount of money and what we were involved with, after the officers were in the house, we try to secure the house; and that entails going into other areas, looking for suspects which (sic) might be armed.
The amount of money involved appears to be $500.
It seems clear that the standard procedure used herein is proscribed by Chimel, supra, as the record is devoid of any showing of exigent circumstances justifying the police action in question. Since we hold the police had no right to make a "protective sweep" under the facts of this case, it follows that the plain view observation of the contraband in question and its seizure were improper.
In view of the foregoing, the trial court erred in failing to grant the motion to suppress. We have considered the other points on appeal and find them to be without merit.
The judgment appealed from its reversed and the cause is remanded for further proceedings consistent herewith.
REVERSED AND REMANDED.
ANSTEAD, J., and SCHWARTZ, ALAN R., Associate Judge, concur.
NOTES
[1] "A Protective sweep" appears to be a euphemistic phrase meaning a cursory search of the premises for additional persons.
[2] McNair v. State, 354 So.2d 473 (Fla. 3d DCA 1978); McGeehan v. Wainwright, 526 F.2d 397 (5th Cir.1976), cert. denied 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976); United States v. Baker, 577 F.2d 1147 (4th Cir.1978), cert. denied 439 U.S. 858, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978); United States v. Smith, 515 F.2d 1028 (5th Cir.1975), cert. denied 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 322 (1976).