387 So.2d 1063 (1980)
STATE of Florida, Appellant,
v.
Eric Anthony FRANCOEUR, and Debra Kay Stewlow, Appellees.
Nos. 79-1135/T4-567, 79-1207/T4-579.
District Court of Appeal of Florida, Fifth District.
September 24, 1980.
Jim Smith, Atty. Gen., Tallahassee, and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Asst. Public Defender, Chief Appellate Division, West Palm Beach, for appellees.
GREEN, OLIVER L., Associate Judge.
The above cases are consolidated in this appeal.
The trial court granted appellee's motion to suppress various controlled substances including a quantity of non-tax paid alcoholic beverages taken from a vehicle, which was then occupied by the appellees. We reverse.
On the evening of January 10, 1979, a concert had begun at the Bob Carr auditorium in Orlando, Florida, at which time two Orlando police officers, Sergeant Charles Smith and Officer Michael Wenger, saw a vehicle variously described as a "mobile home," "camper home," or "van," which was occupied by the appellees. The vehicle was parked in the Bob Carr Auditorium Municipal Parking Lot. Sergeant Smith approached the occupants of the vehicle to ask if they planned to go inside the auditorium. Sergeant Smith shined his flashlight inside the vehicle and saw the defendant, Eric Anthony Francoeur, shove something between his legs. The defendant, Mr. Francoeur, was directed by Sergeant Smith to pull his hand out, at which time, Sergeant Smith observed the handle of a .45 caliber automatic pistol. This pistol was later found to be loaded with armor piercing bullets, and was also found to have the *1064 serial number removed. Sergeant Smith ordered the defendant, Eric Anthony Francoeur, and co-defendant, Debra Kay Stewlow, to exit the vehicle. He then searched both for weapons and called for assistance.
A third Orlando police officer, Officer Repass, then arrived and was instructed by Sergeant Smith that the defendant, Eric Anthony Francoeur, was under arrest for possession of the weapon, and that he should be carefully searched before being placed in the patrol car of Officer Repass. Officer Repass found 20 packages of controlled substances during this search. Sergeant Smith then asked the defendant, Debra Kay Stewlow, for identification. Ms. Stewlow opened the passenger door of the vehicle to get her purse, and at that time, Sergeant Smith observed a round, plastic package behind the driver's seat containing a white powder, which he believed to be a controlled substance. He also observed bales between curtains which hung behind the seats of the vehicle. Sergeant Smith suspected these bales contained marijuana.
Officer Wenger took over supervision of the defendant, Debra Kay Stewlow. Officer Wenger testified that he advised the defendant, Debra Kay Stewlow, of her constitutional rights and then asked if there were other people, drugs, or weapons in the vehicle. Ms. Stewlow told Officer Wenger that she and the defendant, Eric Anthony Francoeur, had been smoking marijuana in the vehicle, and that there was a small amount of marijuana in the vehicle, as well as an additional weapon. Ms. Stewlow was vague as to whether or not anyone else was inside the vehicle. This information was relayed by Officer Wenger to Sergeant Smith. Sergeant Smith then called for his supervisor and the Department K-9 unit.
Officers Smith and Wenger first approached the vehicle at approximately 9:00 p.m., and approximately twenty minutes later, Orlando Police Officer Kenneth Gregory arrived with a dog named Kurt. Officer Gregory first entered the vehicle for the purpose of determining if anyone else was inside. The police dog, Kurt, was trained in locating controlled substances. Before entering the vehicle, the dog indicated there were drugs inside. Officer Gregory and Kurt entered the vehicle and the dog alerted on an attache case. The dog nosed the case, causing it to open. A plastic bag in the attache case was then observed by Officer Gregory. Officer Gregory closed the case and then observed that the bales contained cases of Coors beer. Officer Gregory existed the vehicle, followed by the dog's trainer, who had picked up the attache case and carried it out. The attache case was then returned to the vehicle.
While some of the aforementioned proceedings were transpiring, Officer Wenger went into the Bob Carr Auditorium in order to use the telephone. A young lady named Kathy Turnbeaugh told him that she had earlier been approached by a white female fitting the description of the Defendant, Debra Kay Stewlow, who asked if she wanted to buy controlled substances. Miss Turnbeaugh was taken outside, where she identified Ms. Stewlow as the female who had approached her.
At this point, the officers obtained a search warrant and during the execution of the warrant, controlled substances were found in the attache case. Additional controlled substances, drug paraphernalia, 62.5 cases of untaxed Coors beer, and a .38 caliber Colt revolver were found in the vehicle.
The trial judge's order does not provide us with the basis on which he suppressed the evidence. The appellees, by their counsel, candidly acknowledge that except for the special configuration of the vehicle, the entire procedure was supported under the "automobile exception" line of cases, as first decided in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Indeed, we agree that the conduct of the Orlando Police Department officers in this case fully complies with the law applicable to vehicular searches. The configuration of the vehicle in this case does not alter the result. In the first instance, the vehicle in this case was generally described as being a "mobile home," "camper home," or "van." The dimensions of the vehicle were 8 feet by 22 feet. The facts indicate that the vehicle was being used as personal transportation for the defendants, Eric Anthony Francoeur and Debra Kay *1065 Stewlow. The vehicle was also being used at a public place, for the purpose of transporting several different types of controlled substances, narcotic paraphernalia, untaxed beer and weapons.
While there is no testimony that the defendants were using the vehicle as a living accommodation, it is our view that this factor would not alter the results, in light of all other factors existing in this case. The appellee's attorney has not directed us to any authority which would exclude vehicles of this sort from the "automobile exception" theory. We are aware of none.
In State v. Lopez, 369 So.2d 623 (Fla. 2d DCA 1979), the court applied the "automobile exception" rule to authorize a warrantless search of a locked, cargo portion of a large rental truck. In Miranda v. State, 354 So.2d 411 (Fla. 3d DCA 1978), the court held that the "automobile exception" rule could be applied to the search of a commercial fishing boat. The court stated that "one's reasonable expectation of privacy in an automobile or boat is less than that of a private dwelling and therefore is more open to legitimate governmental intrusion." In Chestnut v. State, 382 So.2d 1349 (Fla. 4th DCA 1980), the court upheld the search of a "seagoing vessel" under the "exigent circumstances" doctrine.
We see no reason for applying an exception to the "automobile exception" rule under the facts of this case. Furthermore, we find that the seizure of the attache case was entirely proper, and the fact that it had been opened by the dog had no bearing on the subsequent search under a lawfully executed search warrant. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); Ulesky v. State, 379 So.2d 121 (Fla. 5th DCA 1979).
Lastly, the defendant, Eric Anthony Francoeur and Debra Kay Stewlow, present the time-worn argument that no "exigent circumstances" existed because the vehicle in this case was under police custody. The facts of this case, including the observance of most of the contraband by Sergeant Smith from outside the vehicle, and the duty of the officers to search for additional occupants, cause this argument to pale to a state of insignificance in light of the holdings in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The United States Supreme Court also rejected this argument in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); reh. den. 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970), stating:
Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the `lesser' intrusion is permissible until the magistrate authorizes the `greater.' But which is the `greater' and which is the `lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
We have carefully reviewed all of the several search and seizure incidents related to the multiple charges against each defendant in this case. We do not find fault with any such incident during which the Orlando Police Officers searched for and seized the several items which have been suppressed in this case. We reverse the order granting the appellee's motion to suppress, and remand the case to the trial court for further proceedings pursuant to this opinion.
REVERSED and REMANDED.
ORFINGER and COBB, JJ., concur.