404 So.2d 1102 (1981)
Vince Alan CHAPAS, Appellant,
v.
STATE of Florida, Appellee.
No. 80-694.
District Court of Appeal of Florida, Second District.
October 7, 1981.
Jerry Hill, Public Defender, and David A. Davis, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
DANAHY, Judge.
Appellant was charged with carrying a concealed weapon, specifically a rifle seized from appellant's automobile. The trial judge denied appellant's motion to suppress the rifle as evidence and appellant pled nolo contendere, reserving his right to review by this court of the denial of his suppression motion. We affirm.
Shortly after midnight, appellant drove into a Sarasota County park which had been closed to the public less than an hour before by county and city law enforcement officers. Appellant ignored a first officer's call to stop, but finally brought his car to a halt when Detective Carroll stopped him.
Upon approaching appellant's car, Detective Carroll formed the opinion that appellant might be intoxicated. The detective ordered appellant out of the car for several field sobriety tests. After appellant failed the tests, Detective Carroll put him under arrest for driving while intoxicated and placed him in a police vehicle.
While the sobriety tests were being conducted, Detective Geary approached appellant's car and looked through the windows, first from the driver's side and then from the passenger's side. He saw a blue blanket on the front seat covering an object which, he said, appeared to be a rifle. However, it was only after Detective Geary put his head through one of the car windows that he was able to see and identify a portion of a rifle barrel which the dashboard had blocked from view outside the window. Detectives Carroll and Geary then opened one of the car doors to get a better look and seized the rifle. Appellant was thereupon arrested for carrying a concealed weapon.
*1103 Since our consideration of the arguments in this case, our supreme court and the Supreme Court of the United States have rendered opinions which are pertinent to our discussion.
The state justified the warrantless search and seizure in this case on the ground that the rifle was in "open view."[1] Appellant countered that if the rifle was in open view, it could not also be considered a concealed weapon prohibited under section 790.01, Florida Statutes (1977). Our supreme court has recently rejected appellant's argument, holding that an object observed by a trained police officer to be a weapon can also simultaneously be a concealed weapon for purposes of section 790.01. Ensor v. State, 403 So.2d 349 (Fla. 1981).
Alternatively, appellant argued that the rifle was not in the open view of Detective Carroll because it was not identified as a rifle until the detective impermissibly intruded into the interior of the car by putting his head through the window. Even assuming the rifle was in open view, however, that circumstance would only have supplied probable cause for a search. Ensor v. State, supra. That search was not constitutionally permissible without a warrant unless there were exigent circumstances. We question whether there were such exigent circumstances in this case.
The warrantless search of an automobile based upon probable cause is generally considered to be coupled with exigent circumstances and is often termed the "automobile exception" to the warrant requirement. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Accordingly, where contraband in a lawfully stopped vehicle is observed in open view, an immediate seizure of the contraband may be constitutionally permissible. Colorado v. Bannister, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d (S.Ct. 1980).
We agree that the "automobile exception" to the warrant requirement does not invariably apply simply because an automobile is involved. Ulesky v. State, 379 So.2d 121 (Fla. 5th DCA 1979) (dictum). But see State v. Francoeur, 387 So.2d 1063 (Fla. 5th DCA 1980), and State v. Lopez, 369 So.2d 623 (Fla. 2d DCA 1979). Here, the driver and sole occupant of the automobile had been placed under arrest and was in a police vehicle at the time of the search. The automobile was parked in an area cordoned off by law enforcement officers and was subject to impoundment. Thus there was not the element of mobility which supplies the exigent circumstance in the usual case involving an automobile. There was no risk that the automobile would be moved and the evidence disappear in the time required to obtain a search warrant.
Accordingly, if the constitutionality of the search and seizure in this case rested solely on the existence of probable cause coupled with exigent circumstances, we would have some difficulty finding that there were exigent circumstances. That question no longer confronts us, however. The decision of the Supreme Court in New York v. Belton, ___ U.S. ___, 101 S.Ct. 2860, 69 L.Ed.2d 768 (S.Ct. 1981), requires that we uphold the search and seizure in this case as a constitutionally permissible search incident to arrest.
In the Belton case, the Supreme Court adopted what it called a "straightforward rule" that the scope of a search incident to an arrest includes the interior of an automobile where the arrestee is the recent occupant of the automobile. While we might not agree that this rule should apply in all cases, and might find that the facts in the instant case are clearly distinguishable from those involved in Belton,[2] we believe *1104 the Supreme Court in the Belton case has foreclosed the option of determining on a case-by-case basis whether the interior of an automobile is within the scope of a search incident to arrest. We read Belton as establishing a rule applicable to all cases involving the arrest of a recent occupant of an automobile, without regard to the facts in the particular case. The Court said:
[A]s one commentator has pointed out, the protection of the Fourth and Fourteenth Amendments "can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement." LaFave, "Case-by-Case Adjudication" versus "Standardized Procedures": The Robinson Dilemma, 1974 Sup.Ct.Rev. 127, 142. This is because "Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged... ." Id., at [141].
In short, "a single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." Dunaway v. New York, 442 U.S. 200, 213-214 [99 S.Ct. 2248, 2257, 60 L.Ed.2d 824].
So it was that, in United States v. Robinson, 414 U.S. 218, [94 S.Ct. 467, 38 L.Ed.2d 427] the Court hewed to a straightforward rule, easily applied, and predictably enforced: "[In] the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement, but it is also a `reasonable' search under that amendment." In so holding, the Court rejected the suggestion "that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." 414 U.S. at 235 [94 S.Ct. at 477].
But no straightforward rule has emerged from the litigated cases respecting the question involved here  the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants... .
When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority. While Chimel v. California, 395 U.S. 752 [89 S.Ct. 2034, 23 L.Ed.2d 685] (1969)] established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within "the area into which an arrestee might reach in order to grab a weapon or evidentiary item." Chimel, supra, at 763 [89 S.Ct. at 2040]. In order to establish the workable rule this category of cases requires, we read Chimel's definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
In this case, as in the Belton case, appellant was the occupant of an automobile who *1105 had been removed from the vehicle and placed under arrest. Applying the Belton rule, we hold that the search of appellant's automobile and seizure of the rifle therein were constitutionally permissible as a search incident to arrest. Accord, Patterson v. State, 402 So.2d 1190 (Fla. 5th DCA 1981).
AFFIRMED.
SCHEB, C.J., and HOBSON, J., concur.
NOTES
[1] The state did not attempt to justify the search as an inventory search incident to impoundment of appellant's car and, because Belton had not been decided, it did not seriously contend that the search was valid as a search incident to arrest.
[2] See the author's discussion of the permissible scope of a search incident to arrest in Ulesky v. State, 379 So.2d 121 (Fla. 5th DCA 1979), cited in the Belton decision. We interpret Belton as tacitly disapproving the view on the subject as expressed in Ulesky.