431 So.2d 315 (1983)
Aracelio MOREJON and Ramon Casal, Appellants,
v.
The STATE of Florida, Appellee.
No. 82-159.
District Court of Appeal of Florida, Third District.
May 17, 1983.
George L. Cardet, Miami, Henry B. Rothblatt, Fort Lauderdale, for appellants.
Jim Smith, Atty. Gen., and William P. Thomas, Asst. Atty. Gen., for appellee.
Before HENDRY, HUBBART and JORGENSON, JJ.
*316 JORGENSON, Judge.
Morejon and Casal entered pleas of nolo contendere specifically reserving their right to appeal the denial of their motion to suppress. Thereafter the trial court adjudicated both appellants guilty of trafficking in cannabis in violation of section 893.135, Florida Statutes (1981), and entered a three-year minimum mandatory sentence with respect to each defendant. For the reasons which follow we reverse.
Acting on information from a United States Customs aircraft relayed to them through their dispatcher, deputies of the Monroe County Sheriff's Office went to a certain location in the Key Largo area. The officers were advised that a motorboat was docked behind a specific house and that the Customs aircraft would be circling overhead. On arrival the officers were advised again through their dispatcher that they were at the proper location. The property was located on a small peninsula with ingress and egress controlled by a single road. Access to the rear of the house, the backyard and the dock was protected by a chain link fence. Thereafter one of the deputies made his way down the chain link fence surrounding the property and crossed over onto the dock of the defendant. Upon approaching the boat, Deputy Leiter testified that he smelled a strong odor of marijuana emanating from the vessel. A closer inspection revealed a bale of material wrapped in burlap which the officer believed from his experience to be marijuana.
Deputy Leiter then observed a man on the second floor terrace of the home. That individual asked Deputy Leiter what Leiter was doing on the property. Deputy Leiter responded that he wanted to see the owner of the boat. Deputy Leiter then heard excited voices and the sound of running from within the house. He and another deputy ordered the occupants outside. Three men came out of the house. Deputy Cockrell then went inside the house and discovered another occupant asleep in the back room. He also observed additional bales of marijuana inside the house. A subsequent search of the boat revealed the presence of additional bales of marijuana.
It is undisputed that no one was aboard the boat at the time Deputy Leiter intruded upon the property in order to make his observations. The trial court based its denial of the motion to suppress on a theory of hot pursuit coupled with exigent circumstances.
Appellants argue (a) that the probable cause requirement of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), is not satisfied and, in the alternative, (b) that the circumstances in this case are not sufficiently exigent so as to permit a search without first obtaining a warrant, see Hornblower v. State, 351 So.2d 716 (Fla. 1977). Since we agree with the appellants that the requisite probable cause to support a search is not present on this record, we do not address the exigent circumstances issue.
The state argues that the Monroe County deputies were entitled to rely upon the communications received from the United States Customs officers as a basis for their action. See Whiteley v. Warden of Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). We would agree with that contention were there a sufficient record to support it. This record is devoid, however, of any evidence which would furnish a basis for the Customs officers' conclusion that either the vessel or the house contained contraband. No representative of United States Customs testified at the motion to suppress, nor did the Monroe County deputies indicate how the Customs officers gained their information.
Notwithstanding the reliability of the Customs officers, the "basis of knowledge" prong of Aguilar is not satisfied. See Terrell v. State, 429 So.2d 778 (Fla. 3d DCA 1983), and the cases cited therein.
Reversed.
HENDRY, Judge, dissenting.
Most respectfully, I must disagree with the majority. I would affirm the denial of *317 appellants' motions to suppress all evidence so obtained.
The evidence adduced at the suppression hearing indicates that appellants were arrested at their residence in Key Largo as a result of a search and seizure of a large quantity of marijuana without a warrant authorizing the search and seizure.
At approximately midday on Sunday, November 9, 1980, Monroe County Deputy Sheriff Leiter received a communication from his radio dispatcher that a United States Customs aircraft had a boat carrying marijuana and five persons under surveillance. Deputy Leiter was directed to proceed to a certain location where he would see the Customs plane which would guide him to the boat which had docked at a house on South Drive in Key Largo.
To insure positive identification of the vessel, the Customs plane remained in the area directly above the house until Deputy Leiter arrived at the scene. The deputy worked his way down a chain link fence on the adjacent property and onto the premises of appellants. As he approached the dock and the boat, he detected the strong odor of marijuana. When he got closer to the boat, he saw what he believed, based on previous experience, to be a bale of marijuana wrapped in burlap.
A man then appeared on the second floor terrace of the home and asked Leiter what he was doing. Leiter responded that he wanted to see the owner of the boat, and the man then turned and spoke to someone inside the house. When Leiter heard excited voices and running inside the house, he and another officer, Deputy Cockrell, who had arrived at the scene, ordered the occupants outside.
When only three men came out, Cockrell went inside and discovered another man asleep in a back room. He also observed two bales of marijuana in the house. Immediately thereafter the officers searched the boat and seized numerous bales of marijuana, the bulk of the amount seized.
Appellants' motions to suppress were denied by the trial court on the bases that Customs' hot pursuit of the vessel and its occupants, resulting from first-hand observation of the contraband, was transferred to the Monroe County Sheriff's Department and continued into the house, and that probable cause existed for the search coupled with exigent circumstances dispensing with the necessity for a search warrant. The order also noted the fact that the incident took place on a Sunday and that the nearest judge in the Keys was at least fifty miles away, and if he was unavailable all other judges were over 100 miles away. I agree with the trial court's conclusions and would affirm.
Warrantless searches and seizures are per se unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the Florida Constitution, subject only to a limited number of well-defined exceptions. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Hornblower v. State, 351 So.2d 716 (Fla. 1977); Taylor v. State, 355 So.2d 180 (Fla. 3d DCA), cert. denied, 361 So.2d 835 (Fla. 1978). Consequently, it must be determined whether this case falls within one of the accepted classes of exceptions.
Exceptions to the warrant requirement arise in those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for recourse to a neutral magistrate. United States v. United States District Court, 407 U.S. 297, 318, 92 S.Ct. 2125, 2137, 32 L.Ed.2d 752, 766 (1972). One of the carefully defined classes of cases constituting an exception to the warrant requirement of the Fourth Amendment involves situations where officers have probable cause for the search and seizure, and exigent circumstances exist making it impracticable to obtain a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Hornblower v. *318 State, supra. Two well-established exigencies dispensing with the warrant requirement are a moving vehicle, Chambers v. Maroney, supra; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and "hot pursuit", United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); Warden v. Hayden, supra.
Initially, I observe that there was more than sufficient probable cause to support the search. As a general rule, probable cause exists where the facts and circumstances within an officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In determining probable cause, an officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge. Jones v. United States, supra.
Under the dual-pronged test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), there must be an indication that the informant gathered his information in a reliable manner and the informant must be a credible person or his information must be reliable.[1] I think it beyond debate that United States Customs is a credible source and its information, here gathered by first-hand observation, was indeed reliable. See Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), holding that police are entitled, in a limited sense, to act upon the strength of a communication through official channels directing or requesting that an arrest be made. The "fellow officer" rule of Whiteley is applicable to situations involving all modes of transmission, including radio, see, e.g., United States v. Vasquez, 534 F.2d 1142 (5th Cir.), cert. denied, 429 U.S. 979, 97 S.Ct. 489, 50 L.Ed.2d 587 (1976), cert. denied sub nom. Chavez-Cortinas v. United States, 429 U.S. 962, 97 S.Ct. 389, 50 L.Ed.2d 330 (1976), and governs communication between federal and state or local authorities, see, e.g., United States v. Impson, 482 F.2d 197 (5th Cir.), cert. denied, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 246 (1973), dispensing with the need for any special showing of reliability as part of the probable cause determination, United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (observations of fellow officers of the government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number); United States v. Various Gambling Devices, 478 F.2d 1194 (5th Cir.1973).
As a fellow law enforcement body, Customs' communique to Monroe County Sheriff's Department relaying the information that they were following a white boat about thirty-one feet long named "Jessica Ann", which was carrying marijuana and had five men aboard, provided ample probable cause for the deputies to proceed to the designated location to investigate further, even though this necessitated entry onto appellants' private property. United States v. Knight, 451 F.2d 275 (5th Cir.1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1171, 31 L.Ed.2d 240 (1972); State v. Garcia, 374 So.2d 601 (Fla. 3d DCA 1979); cf. Romanello v. State, 365 So.2d 220 (Fla. 4th DCA 1978). During this time, the Customs aircraft continued to circle overhead in order to insure that no mistake was made. Thus, information provided by Customs[2] and independently *319 corroborated by Deputy Leiter as he neared the boat and saw that it matched the physical description in the dispatch, and ultimately detected the odor of marijuana and observed the bales, see United States v. Ventresca, supra; Hornblower v. State, supra; Porter v. State, 302 So.2d 481 (Fla. 3d DCA 1974), provided him with probable cause to believe that a felony had been or was being committed. See Whiteley v. Warden, 401 U.S. at 567, 91 S.Ct. at 1036, 28 L.Ed.2d at 313 (information gathered by arresting officers can be used to sustain a finding of probable cause where the additional information corroborates the informer's tip that the arrestees had or were in the process of committing a felony); United States v. Ashley, 569 F.2d 975, 983 (5th Cir.), cert. denied, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978) ("probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest when there is some degree of communication between the two").
In addition to the existence of probable cause, there must be exigent circumstances demonstrating insufficient time to secure a search warrant.
The moving vehicle exception, encompassing boats as well as automobiles, provides that a vehicle or vessel may be searched without a warrant if there is probable cause to believe that the vehicle contains contraband or evidence of crime. Carroll v. United States, supra; Hill v. State, 238 So.2d 608 (Fla. 1970); Miranda v. State, 354 So.2d 411 (Fla. 3d DCA), cert. denied, 364 So.2d 888 (Fla. 1978); Section 933.19, Florida Statutes (1981). This exception derives from the mobility of the vehicle and the fact that one's reasonable expectation of privacy in an automobile or boat is less than that in a private dwelling and is therefore more open to legitimate governmental intrusion. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); Miranda v. State, supra.
Crucial to the hot pursuit exception is the element of urgency and the need for immediate, responsive action by the police which would be thwarted were they required to drop the chase and obtain a warrant. United States v. Santana, supra; Hornblower v. State, supra.
In the present case, it appears that probable cause, coupled with the hot pursuit of the suspects begun by Customs and continued by the Sheriff's Department in combination with the mobility of the vessel, justified the entry onto appellants' property to determine whether marijuana was on board the boat. See State v. Schneider, 401 So.2d 865 (Fla. 3d DCA 1981); State v. Francoeur, 387 So.2d 1063 (Fla. 5th DCA 1980). Once Deputy Leiter had probable cause to believe that the boat was indeed the one under surveillance by Customs, and did have marijuana aboard, he was further justified in searching the boat and arresting the suspects. State v. Schneider, 420 So.2d 341 (Fla. 4th DCA 1982); State v. Jackson, 368 So.2d 66 (Fla. 3d DCA), cert. denied, 378 So.2d 346 (Fla. 1979); cf. State v. Casal, 410 So.2d 152 (Fla. 1982), cert. granted, ___ U.S. ___, 103 S.Ct. 50, 74 L.Ed.2d 56 (1982). The Fourth Amendment does not require police to delay in the course of an investigation to let fugitives escape once the net has been thrown, nor to endanger the lives of the police while procuring a warrant.[3]See Warden v. Hayden, supra. This is particularly true where, as here, not only would a considerable delay elapse in obtaining a warrant, but the actual opportunity to obtain one was somewhat doubtful. When only three of the five known suspects emerged from the house, the officers had the right to conduct a quick and cursory check of the residence since they had reasonable grounds to believe that there were other persons inside who might present a security risk. United States v. Smith, 515 F.2d 1028 (5th Cir.1975), cert. denied, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 322 *320 (1976); United States v. Bowdach, 561 F.2d 1160 (5th Cir.1977), aff'g 414 F. Supp. 1346 (S.D.Fla. 1976); Dedmon v. State, 400 So.2d 1042 (Fla. 1st DCA 1981); State v. Parker, 399 So.2d 24 (Fla. 3d DCA), petition for review denied, 408 So.2d 1095 (Fla. 1981); cf. Daley v. State, 387 So.2d 971 (Fla. 4th DCA 1980), remanded, 392 So.2d 1327 (Fla. 1981); see generally Rizzo v. State ex rel. City of Pompano Beach, 396 So.2d 869 (Fla. 4th DCA 1981); State v. Francoeur, supra. Once legally inside the house, the officers were entitled to seize the two marijuana bales in plain view. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) and cases collected; United States v. Bowdach, supra; Rizzo v. State ex rel. City of Pompano Beach, supra; Albo v. State, 379 So.2d 648 (Fla. 1980); State v. Garcia, supra.
Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), in which the United States Supreme Court held that absent exigent circumstances, the warrantless entry of a dwelling place in order to make a routine felony arrest is unconstitutional under the Fourth Amendment, does not require a holding that the arrest was unlawful. I find Payton distinguishable from the case sub judice. In addition to the fact that the police were not making a routine felony arrest in this case is the existence of exigent circumstances.[4] Given the officers' knowledge that a felony had been or was in the process of being committed, the hot pursuit, the fact that only three of the five known suspects emerged from the house, and the knowledge that drug smugglers are often armed, exigent circumstances justified the entry into the dwelling to arrest the remaining suspects. See United States v. Baker, 577 F.2d 1147, 1152 (4th Cir.), cert. denied, 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978); United States v. Bowdach, supra; McGeehan v. Wainwright, 526 F.2d 397 (5th Cir.), cert. denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976); Dedmon v. State, supra; Newton v. State, 378 So.2d 297 (Fla. 4th DCA 1979), cert. denied, 389 So.2d 1115 (Fla. 1980); State v. Schneider, 420 So.2d 341 (Fla. 4th DCA 1982); cf. United States v. Bulman, 667 F.2d 1374 (11th Cir.), cert. denied sub nom. Howard v. United States, ___ U.S. ___, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982) (no showing of exigent circumstances). In connection with this exigency was the delay inherent in obtaining a warrant.
It should be noted that this does not appear to be a case where the police sought merely to avoid the inconvenience of obtaining a search warrant. See, e.g., Hornblower v. State, 351 So.2d 716 (Fla. 1977). Rather, the officers were drawn into the hot pursuit of suspects engaged in a felony on a Sunday when the nearest magistrate was at least fifty miles away. I find, accordingly, that the circuit court was not clearly erroneous in its determination that exigent circumstances justified the warrantless search and seizure and I would uphold the denial of appellants' motions to suppress. United States v. Duckett, 583 F.2d 1309 (5th Cir.1978); see McNamara v. State, 357 So.2d 410 (Fla. 1978); State v. Battleman, 374 So.2d 636 (Fla. 3d DCA 1979).
I would affirm.
NOTES
[1] If the informant's tip fails to meet either the veracity or basis of knowledge test, it may still, by itself, supply probable cause if the tip is self-verifying, i.e., if its information is so detailed and specific that a "magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way." Spinelli v. United States, 393 U.S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637, 644 (1969).
[2] Appellants do not contend that the Customs aircraft was in a location where it had no legal right to be when the marijuana was observed. Cf. DeMontmorency v. State, (Fla. 1982) (Case No. 61,179, opinion filed October 28, 1982); State v. Rickard, 420 So.2d 303 (Fla. 1982).
[3] The danger in the instant case is the knowledge that drug smugglers are often armed and the fact that some of the suspects remained hidden in the house.
[4] As Payton involved only a routine felony arrest, the Court had no occasion to consider what exigent circumstances would justify a warrantless entry into a home.