770 So.2d 280 (2000)
STATE of Florida, Appellant,
v.
Michael Antonio HILL, Appellee.
No. 5D00-534.
District Court of Appeal of Florida, Fifth District.
November 3, 2000.
Robert A. Butterworth, Attorney General, Tallahassee, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, for Appellant.
James B. Gibson, Public Defender, and Dee Ball, Assistant Public Defender, Daytona Beach, for Appellee.
COBB, J.
The appellee, Michael Antonio Hill, was charged with possession of cannabis with intent to sell, resisting an officer without violence, and possession of drug paraphernalia. He filed a motion to suppress the evidence, the cannabis, found in his vehicle *281 on the basis that the vehicle search was illegal.
As a result of the hearing on the suppression motion, the trial court made the following findings of fact:
On May 24th, 1999, three deputies, including Deputy Matt Pedersen, were patrolling in an unmarked Isuzu Rodeo when they came upon a large car stopped in the middle of a street near an intersection. As the deputies approached they saw the defendant talking to the driver of the large car through the passenger window of the car. Deputy Pedersen had a clear view of the defendant and witnessed him receiving a bill from an occupant of the car. He then saw the defendant reach into his waistband. From his waistband he witnessed the defendant take what appeared to be a baggie and give it to the car's occupant. Based upon his training and experience, the deputy thought the baggie contained marijuana.
After the vehicle departed, the defendant turned toward the deputy's unmarked Isuzu and walked up to Deputy Pedersen's door. Once the defendant reached the car door, Deputy Pedersen stepped out and stated "police, stop". The deputies were all wearing black T-shirts with the words "Orange County Sheriff J.A.M. Unit" in white letters on both the front and back of their shirts. Additionally, each deputy was wearing full department issued duty belts. As soon as the deputies began to exit the vehicle the defendant began to run. The deputies began to chase the defendant, repeatedly yelling for him to stop. As two of the deputies chased the defendant, the third, Deputy Plitt, had driven the Isuzu down a nearby street in an effort to assist the two deputies during their chase. Apparently, as the defendant was being chased, he unknowingly rushed back into the street at which time he collided with Deputy Plitt who was driving the unmarked Isuzu. The defendant was knocked some distance away onto a sidewalk. Deputy Plitt immediately attempted first aid and called for rescue.
As Deputy Pedersen reached the intersection he observed one of the defendant's shoes, car keys, and a black plastic baggie which contained several zip lock baggies with a green leafy substance in them. He recognized the substance as cannabis.
As the defendant was being treated at the scene, an onlooker advised the deputies that the defendant drives a blue Pontiac Bonneville, and that it was not at the scene. The stimulus that prompted this suggestion is not a part of the record. The officers then observed a brown Pontiac Parisienne parked near the point where the defendant emerged and was then struck by the deputy's car. The deputies ran the tag of the brown Pontiac, and were advised via teletype that the vehicle was owned by the defendant.
Based upon his belief that the defendant might be hiding narcotics in his car, Deputy Pedersen called for a canine unit to search the defendant's car.
It is undisputed that the defendant was not seen in the car or in any proximity to it during the occurrence of the events described. Additionally, no consent was received from the defendant to search his car.
Soon Deputy Vidler arrived on the scene with a canine who promptly "alerted" on the defendant's car. The deputies then utilized what they believed to be the defendant's car keys, which were lying in the road near the point where he was struck by the deputy's vehicle. Upon opening the defendant's trunk, the deputies found a fairly substantial cache of a substance that tested positive for cannabis.
The only other relevant fact elicited at the suppression hearing was Deputy Pedersen's testimony that, at some point, the defendant stated to someone in a gathering crowd of onlookers, "remember, *282 I don't have my car here". Again, while there is nothing in the record as to the genesis of that comment by the defendant, there was further testimony from Deputy Pedersen that one of the onlookers apparently made several attempts to reach the spot at which the defendant's keys were dropped on the street.
The state argues that the stop, as well as the search and seizure of the defendant's car were valid based upon all of the facts. Specifically, the state argues that the defendant's statement to an onlooker regarding his car not being at the scene was sufficient to tip off the investigating deputies that his car may, in fact, be at the scene. Further, the state argues that the defendant's prior conduct, wherein the deputies witnessed what appeared to be the sale of narcotics, would give rise to a reasonable assumption that his car would also contain narcotics.
The defendant argues that the deputies never saw him in or near his car, and that there was no probable cause to search his car without a warrant.
The state contends on appeal, as it did below, that once the canine alerted on the vehicle, there was probable cause to justify a warrantless search of the automobile, citing to Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). The state argues that the reasoning in Carroll was based on a motor vehicle's "ready mobility," as further explained in California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The basis for the Carroll doctrine is that there is a reduced expectation of privacy in regard to a motor vehicle due to the characteristics, use and pervasive regulation. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).
In the instant case, however, the police had probable cause, by reason of a canine alert, to believe that a car contained drugseven in the absence of any other exigency. In Cardwell v. State, 482 So.2d 512 (Fla. 1st DCA 1986), the court stated:
The Supreme Court has said that the use of sniff dogs is not a constitutionally prohibited search under the Fourth Amendment and that a sniff dog's "alert" can constitute probable cause to conduct a search. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Once probable cause exists to search a motor vehicle, no warrant need be obtained prior to the search. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Just as no police officer need close his eyes to contraband in plain view, no police officer armed with a sniff dog need ignore the olfactory essence of illegality.
See also Saturnino-Boudet v. State, 682 So.2d 188 (Fla. 3d DCA 1996), rev. dismissed, 689 So.2d 1071 (Fla.1997).
The points that apparently concerned the trial judge, officer safety and the possibility of destruction of the evidence, do not support his finding that a warrant should have been secured because of the automobile exception in conjunction with the canine alert. In the cases relied upon by the trial judge in his suppression order[1] there was no canine alert. In the instant case the canine alert gave probable cause to search the automobile irrespective of its ownership or the proximity of the owner.
REVERSED AND REMANDED.
SAWAYA and PLEUS, JJ., concur.
NOTES
[1] See, e.g., New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Thomas v. State, 748 So.2d 988 (Fla.1999); Chapas v. State, 404 So.2d 1102 (Fla. 2d DCA 1981).