399 So.2d 24 (1981)
The STATE of Florida, Appellant,
v.
Norman PARKER, Jr., Appellee.
No. 80-345.
District Court of Appeal of Florida, Third District.
May 19, 1981.
*26 Janet Reno, State Atty. and Arthur Joel Berger, Asst. State Atty., for appellant.
Bennett H. Brummer, Public Defender and Bruce A. Rosenthal, Asst. Public Defender, for appellee.
Before HENDRY, SCHWARTZ and FERGUSON, JJ.
HENDRY, Judge.
Appellee, defendant below, has been indicted for a series of crimes in this jurisdiction. The state sought to introduce into evidence a handgun previously seized by the Washington, D.C. police in conjunction with a shooting involving the same defendant in that jurisdiction in 1978. The court below, at a suppression hearing, ordered that the handgun seized in Washington could not be *27 introduced into evidence. The state has appealed that suppression order.
To determine the propriety of the suppression order, we must therefore review the circumstances on the evening of August 23, 1978 when the Washington, D.C. police seized the subject handgun. On that evening a barroom shooting was reported over the police radio and a lone suspect and his car were described. By automobile registration records and a physical description of the suspect, police traced the defendant to his residence near where the shooting occurred. Ms. Yerkin, an occupant of the house, opened the door to the officers who then entered without permission. Ms. Yerkin and another female occupant were ordered to stay outside on the front porch of the house. Several officers fanned out around the premises while others made a cursory search of the house. Not long after the police arrived, the defendant, unarmed and with hands raised above his head, appeared from a stairwell to the basement at the rear of the house and announced his surrender. He was then frisked, handcuffed, arrested, and transported from the scene.
After the defendant was removed, the police carefully searched the house and the fenced back yard for evidence. The police then entered the yard next door where they noticed a revolver underneath a ladder next to the basement stairwell in the defendant's yard. Photographs admitted into evidence show the gun stuck into a crevice of the stairwell next to the fence. An officer was then posted to guard the weapon until evidence technicians arrived to conduct a thorough search of the area. During this time there were approximately eight or nine policemen combing the premises for evidence. The handgun and other evidence discovered inside the house were seized although no warrant was ever obtained.[1]
On this appeal the state's primary argument is that the trial court erred in suppressing the handgun because the defendant failed to establish a reasonable expectation of privacy in the area where it was found. Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
In order to establish a zone of privacy upon which the government may not intrude without first obtaining a search warrant, a person must show: (1) an actual expectation of privacy in the area in question, and (2) that the expectation of privacy is in an area that society is prepared to recognize as reasonable. Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); Shapiro v. State, 390 So.2d 344 (Fla. 1980), cert. denied, ___ U.S. ___, 101 S.Ct. 1519, 67 L.Ed.2d 819 (1981).
Measured against this standard, we conclude that the defendant established a reasonable expectation of privacy in the Washington, D.C. residence and that this expectation extended to the back yard area where the gun was seized. This result is fully supported by the trial court's conclusion of law[2] that the defendant had a reasonable and legitimate expectation of privacy in the residence[3] which extended to the enclosed back yard and to the stairwell area adjoining his residence. Moreover, the defendant, by concealing the gun in the crevice, "exhibited an actual (subjective) expectation of privacy." Smith v. Maryland, supra, 442 U.S. at 740, 99 S.Ct. at 2580; Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. *28 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., concurring). The defendant has thus fulfilled the first prong of the two-part test for invoking the protection of the fourth amendment.
The defendant has also satisfied the second requirement that the expectation of privacy be in an area recognized as reasonable by society, since one's dwelling has long been regarded as constituting a zone of privacy. This theory is rooted partly in real and personal property concepts and partly in society's recognition of a person's right to act as he wishes in certain places. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); State v. Morsman, 394 So.2d 408 (Fla. 1981); Norman v. State, 379 So.2d 643 (Fla. 1980).
This expectation of privacy one has in his home has traditionally been extended to include the area surrounding and related to the dwelling. See Fixel v. Wainwright, 492 F.2d 480 (5th Cir.1974) (privacy expectation of defendant who occupied one unit of a four-unit apartment building held to extend to enclosed rear yard or curtilage not normally used as a common passageway); Norman v. State, 379 So.2d 643 (Fla. 1980) (holding that tobacco barn within fenced farm was included in expectation of privacy); State v. Morsman, 394 So.2d 408 (Fla. 1981) (defendant's expectation of privacy held to extend to rear unenclosed yard of residence); Huffer v. State, 344 So.2d 1332 (Fla. 2d DCA 1977) (reasonable expectation of privacy in hothouse located behind defendant's house, notwithstanding the fact that it was constructed of clear plastic sheets). Accord State v. Johnson, 301 N.W.2d 625 (N.D. 1981) (reasonable expectation of privacy in an unenclosed area to one side of defendant's home).
What a person seeks to preserve as private may be constitutionally protected despite the fact that it is in an area accessible to the public. Katz v. United States, supra. Accordingly, there is even more compelling justification for finding a zone of privacy in the area where the defendant hid the gun since it was in an enclosed back yard not accessible to the public. Generally, the back yard is considered more private than the front because passersby cannot view this area. See Fixel v. Wainwright, supra; State v. Morsman, supra; Norman v. State, supra. Although the defendant's back yard was visible to his neighbors, he still had a reasonable expectation of privacy there as to the public in general, especially as to the location of the revolver, since it was secreted in a crevice not readily visible to the untrained eye. Compare with Lightfoot v. State, 356 So.2d 331 (Fla. 4th DCA), cert. denied, 361 So.2d 833 (Fla. 1978) where the defendant had marijuana plants growing out in the open, exposed to view. Consequently, we find that the defendant had an actual expectation of privacy in the back yard of his home, and that this area is recognized as a zone of privacy.
Having determined that the defendant may claim the protection of the fourth amendment, we must next decide whether the state has justified the intrusion by demonstrating an exception to the warrant requirement. Warrantless searches are "per se unreasonable under the Fourth Amendment  subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The exceptions are "jealously and carefully drawn," Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958), and the burden is on the state to demonstrate that the procurement of a warrant was not feasible because "the exigencies of the situation made that course imperative." Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Norman v. State, supra; Hornblower v. State, 351 So.2d 716 (Fla. 1977).
The state attempts to justify the search and seizure by reliance on several well established exceptions to the warrant requirement.
First, the state argues that the police action here was reasonable based on the existence of probable cause and exigent circumstances. Specifically, the state claims that a gun is a dangerous instrumentality *29 and, knowing that a weapon was involved in the incident, the police were justified in locating it and removing it from the scene so no one would get hurt. This argument is specious. Officers were posted all over the property, and the possibility that someone would walk into a private, enclosed yard which was swarming with police and remove the gun was highly unlikely. The police had complete control of the property from the moment they arrived on the scene, and once the suspect was taken into custody, had ample time to secure a warrant while officers guarded the area.
The state also appears to rely on the "protective sweep" exception. However, the purpose of such a search when an arrest takes place is to check for possible accomplices, not evidence, and is justified only if necessary to allow officers to carry out the arrest without fear of violence. United States v. Bowdach, 561 F.2d 1160 (5th Cir.1977); Newton v. State, 378 So.2d 297 (Fla. 4th DCA 1979), cert. denied, 389 So.2d 1115 (Fla. 1980); Grant v. State, 374 So.2d 630 (Fla. 3d DCA 1979). In the present case, the police had no reason to believe that there might be anyone else present at the house other than the defendant and the two women  the broadcast had described a lone suspect and the police had already made a cursory check of the premises.
We also find inapplicable the state's contention that the police were in hot pursuit of the defendant and were thus not required to obtain a warrant. Based on the fact that the extensive search of the premises which turned up the revolver did not even begin until after the defendant had been arrested, handcuffed, and taken away, the police were clearly not in "hot pursuit" of the defendant when they seized the gun.
Nor can this seizure be justified as incident to arrest. This exception is rationalized as necessary to seize weapons to prevent an assault on arresting officers and to prevent the destruction of evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Chimel restricts the scope of the search, however, to the person of the accused and the area within his immediate control. The search must also be contemporaneous with the arrest and not be remote in time or place, Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), and where, as here, the search begins after the accused is taken away and continues for some time thereafter, it is a general exploratory search and not incident to arrest. United States v. Bell, 457 F.2d 1231 (5th Cir.1972).
The state next argues that the seizure of the gun was justified on the basis that it was in plain view. A warrantless seizure of evidence in plain sight is constitutionally permissible only where three requirements are met: (1) the evidence must be observed in plain sight without the benefit of a search, (2) the police must have a legal right to be where they are at the time of the observation, and (3) the police must have probable cause to believe that the evidence observed constitutes contraband or fruits, instrumentalities, or evidence of crime. (e.s.) Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 202, 29 L.Ed.2d 564 (1971); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Spinkellink v. State, 313 So.2d 666 (Fla. 1975); Pomerantz v. State, 372 So.2d 104 (Fla. 3d DCA 1979), cert. denied, app. dism., 386 So.2d 642 (Fla. 1980); Hansen v. State, 385 So.2d 1081 (Fla. 4th DCA 1980).
Assuming arguendo that the police had a legal right to be on the property next door when they spotted the gun,[4] and had probable cause to believe that the revolver was an instrumentality of the crime, this justification must still fail because a general exploratory search was in progress at the time the gun was discovered. See *30 Coolidge v. New Hampshire, supra; Pomerantz v. State, supra. The plain view doctrine may not be employed to extend a search until something turns up. The trial court found that the revolver was located only after the police conducted an extensive and thorough search of the defendant's yard. As such, the gun was not discovered inadvertently and the seizure was unreasonable.
Finally, the state alleges that the defendant had abandoned the weapon, thus justifying the seizure. To constitute abandonment, the property must be discarded in a place where the person has no reasonable expectation of privacy, such as an open field, or public street. State v. Washington, 376 So.2d 1216 (Fla. 3d DCA 1979); State v. Oliver, 368 So.2d 1331 (Fla. 3d DCA 1979), cert. dism., 383 So.2d 1200 (Fla. 1980). As established by the record and our finding that the defendant had a legitimate expectation of privacy in the premise, his placement of the gun in the stairwell crevice does not amount to abandonment.
For the reasons stated, and upon the authorities cited, we hold that the defendant had a legitimate expectation of privacy in the enclosed back yard of his residence where the revolver was found. In light of the state's failure to establish a valid exception to the warrant requirement, the search and subsequent seizure of the revolver violated the defendant's constitutional rights. Other points on appeal have been considered and found to be without merit. Accordingly, the trial court's order suppressing the evidence is affirmed.
Affirmed.
NOTES
[1] The state challenges only the suppression of the handgun and the fruits thereof; no error is alleged with respect to suppression of the items seized from inside the house.
[2] On review of a motion to suppress, a trial court's findings of fact and conclusions of law are presumed correct, and in testing the accuracy of these conclusions an appellate court must interpret the evidence and all reasonable deductions and inferences which may be drawn therefrom in the light most favorable to the trial judge's conclusion. Shapiro v. State, supra.
[3] The trial court specifically found that the defendant resided at the house, ate his meals there, kept clothing and personal effects there, and continued to household expenses.
[4] This is somewhat doubtful since the officers were no longer in hot pursuit when they went into the neighbor's yard and thus had no greater rights than an ordinary citizen who would be considered a trespasser if there without consent of the owner. It is unknown whether the police obtained consent before going into the neighboring yard.