588 So.2d 248 (1991)
Norris Allen WEST, Appellant,
v.
STATE of Florida, Appellee.
No. 90-3004.
District Court of Appeal of Florida, Fourth District.
September 18, 1991.
Certification Granted October 24, 1991.
*249 Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joseph A. Tringali, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Appellant was charged by information with the unlawful manufacture of a controlled substance. His motion to suppress having been denied, he pled no contest, reserving the right to appeal the denial of his motion to suppress cannabis plants found by officers in his backyard. We reverse and remand.
The parties stipulated to the following facts:
On February 2, 1990, Officer Harvey Simms of the Miramar Police Department responded to [West's] home located at 1911 S.W. 100th Avenue, Miramar, Florida, in reference to an anonymous tip that marijuana plants were growing to the rear of the house behind a shed. Upon arrival, Officer Simms and Johnson made contact with [West] and advised [him] as to their purpose in being there, requesting permission to look behind the shed in [West's] backyard.
Waiving his Miranda rights as read to him by Officer Simms, [West] informed the police that there was no marijuana growing in his backyard and that without a warrant, he would not allow the officers entry onto his property.
Two more police officers arrived and while [West] was detained, Officer Johnson obtained permission from [West's] neighbor, David Loupe, to use his backyard located at 1910 S.W. 99th Terrace, Miramar, to search [West's] backyard by looking over a dividing fence.
Officer Johnson communicated to Officer Simms from Loupe's residence that he did indeed observe marijuana plants in [West's] backyard. After informing [West] that he was under arrest, Officer Simms responded to Loupe's residence while [West] continued to be detained, and he also observed marijuana plants in [West's] backyard.
After photographing [West's] backyard where the marijuana plants had been seen, Officers Simms and Johnson seized the plants without first obtaining a warrant and placed them into evidence.
The prosecutor informed the trial court of some additional facts; namely, that when appellant was read his Miranda rights, he told Officer Simms to go ahead and look behind the shed. Simms chose not to because Officer Johnson was already on his way to the neighbor's backyard.
The trial court's denial of the motion to suppress was based on Lightfoot v. State, 356 So.2d 331 (Fla. 4th DCA), cert. denied, 361 So.2d 833 (Fla. 1978). We find Lightfoot inapplicable to the instant case because appellant's yard was separated by a solid wooden fence, as opposed to one that could be "seen through"; therefore, the plants could not be seen by a neighbor standing in his or her yard.
The touchstone of fourth amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy." Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587 (1967) (Harlan, J., concurring). To resolve whether any given expectation of privacy is reasonable, Katz sets forth a two-part inquiry: First, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable? See Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226-27 (1979).
In the instant case, the state is not challenging appellant's subjective expectation of privacy. He clearly had a subjective expectation of privacy in the area immediately to the rear of his house. (It follows that had appellant's next door neighbors occupied two-story homes, the expectation would not have existed.) The "curtilage," the land immediately surrounding and associated with the home, is given the same fourth amendment protections that attach to the home. Oliver v. United States, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214, 225 (1984). The curtilage is *250 the area to which extends the intimate activity associated with the "sanctity of a man's home and the privacies of life." Id.
As the state correctly contends, the dispositive issue in this appeal is whether appellant's expectation of privacy was [objectively] reasonable. Assuming that his yard falls within the curtilage, the issue is whether the officer's act of climbing a ladder and peering over a "dividing fence" violated an expectation of privacy that is reasonable. We find it did.
The state's reliance upon California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210, reh'g denied, 478 U.S. 1014, 106 S.Ct. 3320, 92 L.Ed.2d 728 (1986), is not persuasive as the officers, acting on a tip, inspected the backyard of a particular house while flying in a fixed-wing aircraft at 1,000 feet, not from a ladder next door.
Similarly, Florida v. Riley, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835, reh'g denied, 490 U.S. 1014, 109 S.Ct. 1659, 104 L.Ed.2d 172 (1989), is inapposite, the officers having received an anonymous tip that marijuana was being grown on Riley's property. When an investigating police officer discovered that he could not see the contents of the greenhouse from the road, he circled twice over respondent's property in a helicopter at a height of 400 feet. Again, this is not factually similar to the present case.
It is worth noting that after expressing their agreement with the majority that Ciraolo's yard was within the curtilage, four justices of the Supreme Court agreed:
Since [the officer] could not see into this private family area from the street, the Court certainly would agree that he would have conducted an unreasonable search had he climbed over the fence, or used a ladder to peer into the yard without first securing a warrant. [Emphasis added]
Ciraolo, 476 U.S. at 222, 106 S.Ct. at 1817, 90 L.Ed.2d at 222 (Powell, Brennan, Marshall, Blackmun, JJ., dissenting). This is precisely what occurred in the instant case. See also State v. Boynton, 58 Haw. 530, 574 P.2d 1330 (1978); State v. Waldschmidt, 12 Kan. App. 2d 284, 740 P.2d 617 (1987).
Like the defendants in Boynton and Waldschmidt, appellant had a reasonable expectation of privacy. While his marijuana plants may have been visible from the "navigable air space" above his home, they were not visible to the officers on the ground. Although the officers did have the legal right to be in the neighbor's yard, they did not have the right to scale the dividing fence in order to conduct a search.
It is no search to observe on that land what a neighbor could readily see, but to resort to extraordinary efforts to overcome the defendant's reasonable attempts to maintain the privacy of his curtilage is a search.
W. LaFave and J. Israel, Criminal Procedure, § 3.2(c) at 172 (1984 & Supp. 1990).
With respect to the question of a consent search, in order to rely thereon, the state has the burden of proving that the consent was in fact freely and voluntarily given. Norman v. State, 379 So.2d 643, 646 (Fla. 1980). The voluntariness of a defendant's consent to search is to be determined from the totality of the circumstances. State v. Jerome, 541 So.2d 756 (Fla. 4th DCA 1989). Under ordinary circumstances, where there is no antecedent police misconduct, a consent to search need be shown only by a preponderance of the evidence. Elsleger v. State, 503 So.2d 1367, 1369 (Fla. 4th DCA), cause dismissed, 511 So.2d 298 (Fla. 1987). However, when consent is obtained after illegal police activity such as an illegal search, the subsequent consent is presumptively tainted. Id. In such situations, the consent "will be held voluntary only if the taint is dissipated by a break in the chain of illegality, shown by clear and convincing proof." Id.
Appellant only consented to a search of the area behind the shed after Officer Johnson went to conduct the illegal search; therefore, any consent eventually communicated by appellant to the officer was presumptively involuntary. Additionally, he was not free to leave, the record indicating that he was at least in de facto *251 custody. In such a coercive setting, and faced with the knowledge that Officer Johnson was about to climb the ladder located in his neighbor's yard, appellant's conduct at best rises to the level of acquiescence to authority, and not free and voluntary consent to search. Norman, 379 So.2d at 648. Mere reflexive submission to apparent authority is not consent. See State v. Castillo, 545 So.2d 965 (Fla. 3d DCA 1989).
Finally, the officers failed to secure a search warrant before actually entering appellant's property and seizing the contraband. A search warrant is required to enter a person's constitutionally protected area even if the contraband is in open view. See Ensor v. State, 403 So.2d 349 (Fla. 1981). In both Ciraolo and Riley, where the Supreme Court held that the police officers' searches were not violative of the fourth amendment, the officers obtained warrants before entering the defendants' properties and seizing the contraband. The "open view" observations provided the officers with the necessary probable cause to obtain warrants. No such attempt was made in the instant case even after the officers observed and photographed the plants; therefore, Officers Simms and Johnson conducted an unreasonable seizure as well.
GLICKSTEIN, C.J., and WARNER, J., concur.
HERSEY, J., concurs specially with opinion.
HERSEY, Judge, concurring specially.
There is something wrong with the concept that whether an individual has a reasonable expectation of privacy which society is willing to recognize may depend upon the method used to invade that privacy. With the exception of methods that actually violate property rights of the individual, such as reaching over a fence and into the protected air space, I should think that either the expectation is reasonable or it is not. If the contraband can be seen by either a fixed wing aircraft at 1000 feet or a helicopter at 400 feet, how can the expectation that it will not be seen be reasonable? Or, more to the point, why should society be willing to recognize the right where the observer stands on a ladder but not where the observer sits in an aircraft? Suppose law enforcement officers used a periscope to see over the concealing fence, what would be the result?
Recognizing that we are bound by supreme court precedent, I concur in the majority opinion.