604 So.2d 551 (1992)
STATE of Florida, Appellant,
v.
James SARANTOPOULOS, Appellee.
No. 92-00403.
District Court of Appeal of Florida, Second District.
August 26, 1992.
*552 Robert A. Butterworth, Atty. Gen., Tallahassee, and Susan Henderson, Asst. Atty. Gen., Tampa, and Elaine L. Thompson, Asst. Atty. Gen., Hollywood, for appellant.
Denis M. deVlaming, Clearwater, for appellee.
PARKER, Judge.
The State of Florida appeals a trial court order which granted a motion to suppress marijuana and diazepam seized pursuant to a search warrant. We reverse, concluding that although James Sarantopoulos manifested a subjective expectation of privacy in the curtilage of his home, society is not prepared to recognize his expectation as reasonable. Thus the officers seized the contraband during a lawful search.
The parties provided the following evidence to the trial court at the hearing on the motion to suppress. A detective for the Largo Police Department testified that he received information from a fellow officer that an unidentified individual had contacted the police and informed the police that marijuana was inside James Sarantopoulos's home and marijuana plants were growing in the backyard. The officers went to the residence to verify the information. The residence, a single-family, one-story home, had a backyard surrounded by a six-foot wooden board-on-board fence. The front yard did not have a fence. The officers walked through an adjoining neighbor's unfenced yard without seeking the neighbor's permission. The officers could not see through the fence into Sarantopoulos's backyard. From the neighbor's yard, a detective stood on his tip toes, looked over the fence, and saw several marijuana plants growing in five gallon buckets.[1] The officers used no other devices to view the property nor did they trespass onto Sarantopoulos's property.[2] Based upon their observations and the anonymous tip, the officers obtained a search warrant to search the residence and the backyard.
The trial court, however, suppressed the evidence seized pursuant to this search warrant. In its order granting the motion to suppress the evidence, the trial court made the following findings:
The photographs of the location, the testimony of the officer and the testimony of the defendant regarding the construction, maintenance and location of the fence and the adjacent structures make it clear that Mr. Sarantopoulos had a reasonable expectation of privacy in the subject location. The Court finds *553 law enforcement engaged in "extraordinary efforts" to overcome the defendant's reasonable attempts to maintain the privacy of his curtilage. On the basis of West v. State, 588 So.2d 248 (DCA 1991) [sic] the actions constitute a search.
Since the only other information contained in the affidavit for the search warrant was from an unnamed tipster, the trial court concluded that the search warrant must fail.
We recognize that the area of Sarantopoulos's fenced backyard is clearly within the curtilage of his home[3] and warrants fourth amendment protection. See Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Thus the issue in this case must be resolved pursuant to Article 1, Section 12 of the Constitution of the State of Florida,[4] which should be construed in conformity with the Fourth Amendment to the United States Constitution.
A fourth amendment analysis must begin with the two-part inquiry to determine whether a person has a constitutionally protected reasonable expectation of privacy, which the Supreme Court set forth in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). First, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society prepared to recognize that expectation as reasonable? See Rakas v. Illinois, 439 U.S. 128, 143-44 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387, 401 n. 12 (1978). See also Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226-27 (1979).
Clearly, Sarantopoulos with his solid six-foot fence has manifested a subjective expectation of privacy in his backyard. Thus he meets the first prong of the inquiry.
This court, however, must consider the second prong of the inquiry and determine whether society is prepared to recognize his expectation as reasonable. The way society views the actions of Sarantopoulos defines the zone of privacy he may create for protection from searches under the fourth amendment.[5] We conclude that society is not prepared to honor Sarantopoulos's expectation of privacy and that his expectation of privacy, viewed objectively, is unreasonable.
*554 First, Sarantopoulos, by building a solid six-foot fence, has created his zone of privacy from persons in adjoining yards attempting to peer into his yard from six feet or lower. Sarantopoulos has not created a zone of privacy from a neighbor's observations over the fence if that neighbor is seven feet tall. He also has not created a zone of privacy for a person in an adjoining yard standing on a ladder trimming trees or repairing a roof, as the Supreme Court recognized in California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). A property owner reasonably should foresee that neighbors or other persons on the adjoining land may use devices which place those persons in a position to view over a six-foot fence. Further, as Sarantopoulos acknowledges, the Supreme Court has recognized that it would not be an unlawful search for law enforcement to fly over his property and view the backyard, so long as law enforcement does not violate any laws or Federal Aviation Administration (FAA) regulations. See Florida v. Riley, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989).
The trial court relied on West v. State, 588 So.2d 248 (Fla. 4th DCA 1991) in finding that law enforcement's actions constituted a search. We, however, disagree with West[6] and certify conflict.
In West, the First District Court held that a police officer's act of climbing a ladder in a neighbor's yard with the neighbor's permission and peering over a solid wooden fence into a defendant's yard violated the defendant's reasonable expectation of privacy within the curtilage of his home and was therefore a violation of his fourth amendment rights against unreasonable search. West recognized, however, that had the defendant's next door neighbors occupied two-story homes, the defendant's expectation of privacy would not have existed. If this is true, we conclude that the zone of privacy Sarantopoulos has created protects him only from people on adjoining property who remain on the ground and are unable to see over a six-foot fence unaided. However, for people who can see over the fence from adjoining yards, be they roof repairmen, tree trimmers, power company pole climbers, or seven-foot basketball players, there is no zone of privacy within a backyard surrounded by a six-foot fence that society is prepared to recognize.
Sarantopoulos also relies upon State v. Parker, 399 So.2d 24 (Fla. 3d DCA), review denied, 408 So.2d 1095 (Fla. 1981) as support for a violation of his fourth amendment rights. In Parker, eight or nine police officers in Washington, D.C., entered the home of the defendant without permission in search for the defendant and a handgun. After the defendant was located, the search continued into the backyard of the residence. From the yard next door, the police noticed a handgun stuck in a crevice of a basement stairwell and seized it. The Third District Court, in upholding the trial court's suppression of the evidence, concluded that the defendant satisfied both requirements of the Rakas standard for a reasonable expectation of privacy. As to the second requirement (privacy which is recognized as reasonable by society), the Third District Court stated:
Although the defendant's back yard was visible to his neighbors, he still had a reasonable expectation of privacy there as to the public in general, especially as to the location of the revolver, since it was secreted in a crevice not readily visible to the untrained eye.
Parker, 399 So.2d at 28. To the extent that Parker may stand for the proposition that police officers may not stand upon *555 adjoining land and look for contraband or fruits of a crime within the curtilage of a defendant's residence, we disagree and certify conflict.
Second, Sarantopoulos had no legitimate expectation of privacy in his neighbor's property, and his fourth amendment rights were not violated by the detective's presence on that property. Cf. Oliver, 466 U.S. at 183, 104 S.Ct. at 1743-44 (trespass of officers onto defendant's open fields is not a search proscribed by the fourth amendment because society does not recognize an expectation of privacy in open fields). Sarantopoulos cannot create his zone of privacy in his backyard upon the premise that his adjoining neighbors will not permit police officers or others to enter the neighbor's backyard and use means to peer over a six-foot fence. Such a reliance is unrealistic. Most neighbors who were not suspects of a criminal violation likely would permit a police officer to enter his or her backyard to gain evidence concerning a crime occurring nearby.
Finally, since the zone of privacy Sarantopoulos has created by his fence is at best a limited zone of privacy, the observations of the detective cannot be an illegal search unless the detective's entry into the neighbor's yard, without permission, is a factor which makes the detective's actions an illegal search. We conclude that the police officer's entry into the neighbor's yard, without permission,[7] to look over the fence into Sarantopoulos's backyard, did not violate Sarantopoulos's constitutionally protected right to privacy in violation of the fourth amendment.
We are aided in this conclusion by the Supreme Court's case of United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). In Dunn, government agents, without a warrant, entered the defendant's property by climbing a perimeter fence, walked one-half mile, crossed several barbed wire fences, climbed a wooden fence enclosing the front of a barn, and peered through fishnet to determine that contraband was located inside the barn. Although the barn was not within the curtilage of a nearby home, obviously the officers were trespassing upon the defendant's property to observe the contents of the barn. The Supreme Court upheld the government's actions to make observations in the face of the government trespass upon the defendant's land, concluding that the open fields doctrine permitted such law enforcement activity. Further, in Oliver, the majority of the Supreme Court rejected Justice Marshall's desire to adopt a rule that "[p]rivate land marked in a fashion sufficient to render entry thereon a criminal trespass under the law of the State in which the land lies is protected by the Fourth Amendment." Oliver, 466 U.S. at 195, 104 S.Ct. at 1750. Therefore, in this case the officers' civil trespass on adjoining land to look into the curtilage of Sarantopoulos's *556 home should not make the search illegal.
We believe our supreme court has answered this question in State v. Rickard, 420 So.2d 303 (Fla. 1982). Although confronted with a different issue, the supreme court considered the following pertinent facts in determining whether the defendant's fourth amendment rights had been violated. The defendant's neighbor informed the police that he observed marijuana plants growing in the defendant's backyard. Because the police could not see the plants from the neighbor's yard, the neighbor took the officer to a privately owned citrus grove behind the defendant's yard where the officer observed the marijuana plants. The supreme court, holding that the officers were required to obtain a search warrant before they could seize the contraband, noted that the "defendant's backyard was open to view by police, possibly grove workers, and meandering neighbors." Rickard, 420 So.2d at 305-06. Thus the Rickard court inferred that officers may make observations, without permission, from private property which is adjacent to the defendant's property without intruding into a protected area.
We reverse the trial court's order suppressing the evidence seized by search warrant and remand for further proceedings consistent with this opinion.
Reversed and remanded.
PATTERSON and BLUE, JJ., concur.
NOTES
[1] The detective testified that he was six feet two inches and could stand on his tip toes and see the plants on the other side of the fence. The neighbor testified that he was six feet one inch and he would have to stand on the lower rail of the fence to see into Sarantopoulos's backyard. Sarantopoulos testified that he was six feet and could not look over the fence without standing on something.
[2] We note that the trial court never made a finding that the detective was untruthful as to what the detective saw or the method the detective used to make his observations. We, therefore, must accept the detective's testimony as truthful.
[3] In United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the Supreme Court stated:

Drawing upon the Court's own cases and the cumulative experience of the lower courts that have grappled with the task of defining the extent of a home's curtilage, we believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.
Dunn, 480 U.S. at 301, 107 S.Ct. at 1139 (citations omitted) (footnote omitted).
[4] That constitutional provision states:

Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
[5] As an example, a ten-foot fence surrounded by a six-foot outer fence completely enclosing a residence yard obviously indicates a desire by a person that he does not welcome "peeping" into his yard. However, the Supreme Court, with those facts, held that if the police observe contraband from a public vantage point where the police have a right to be (from an aircraft in public navigable airspace), the defendant's expectation of privacy is unreasonable and is an expectation of privacy that society is not prepared to honor. California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).
[6] We recognize that West quotes the four dissenting judges in Ciraolo who observed that:

Since [the officer] could not see into this private family area from the street, the Court certainly would agree that he would have conducted an unreasonable search had he climbed over the fence, or used a ladder to peer into the yard without first securing a warrant. [Emphasis added]
West, 588 So.2d at 250 (quoting Ciraolo, 476 U.S. at 222, 106 S.Ct. at 1817 (Powell, Brennan, Marshall, Blackmun, JJ., dissenting)). Based upon Ciraolo and Riley, we are not confident that the majority of the Supreme Court would agree with this statement.
[7] We hesitate to describe the detective's presence on the adjoining property, without permission, as a trespass without pointing to the difference in the civil and criminal laws as they relate to trespass. Section 810.09, Florida Statutes (1991) requires active or constructive notice that one is trespassing by an authorized person to create a criminal trespass on real property.

810.09 Trespass on property other than structure or conveyance. 
(1) Whoever, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance as to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. 810.011, commits the offense of trespass on property other than a structure or conveyance.
As to civil trespass, a trespass to real property is an injury to or use of the land of another by one having no right or authority. Brown v. Solary, 37 Fla. 102, 19 So. 161 (1896). See also Guin v. City of Riviera Beach, 388 So.2d 604 (Fla. 4th DCA 1980). To be entitled to recover damages for a trespass, a plaintiff must have been the owner or in possession of the land at the time of the trespass. Vincent v. Hines, 79 Fla. 564, 84 So. 614 (1920). The measure of damages in an action for trespass to lands is the difference in value of the land before and after the trespass. Gasque v. Ball, 65 Fla. 383, 62 So. 215 (1913). When the trespass occurs, and no actual damages are proven, the plaintiff is entitled to a judgment for nominal damages and costs. Leonard v. Nat Harrison Associates, Inc., 122 So.2d 432 (Fla. 2d DCA 1960).