638 So.2d 537 (1994)
STATE of Florida, Appellant,
v.
Timothy Mark PAUL, Appellee.
No. 93-420.
District Court of Appeal of Florida, Fifth District.
May 6, 1994.
Rehearing Denied June 28, 1994.
*538 Robert A. Butterworth, Atty. Gen., Tallahassee, and Rebecca Roark Wall, Asst. Atty. Gen., Daytona Beach, for appellant.
James B. Gibson, Public Defender, and James T. Cook, Asst. Public Defender, Daytona Beach, for appellee.
W. SHARP, Judge.
The state appeals from an order granting Paul's motion to suppress evidence of cocaine found in his automobile, after a stop by the police.[1] The state argues the police officer's testimony at the suppression hearing, which was the only testimony proffered, conclusively establishes Paul consented to the search. We affirm.
The state makes no argument on appeal that Paul's initial stop by the police officer was a Terry[2] stop or one based on a founded suspicion that a crime had been committed. The officer testified he saw several males around Paul's vehicle but admitted that he did not see any actual drug transaction, did not recognize any of the individuals involved, and did not see any cash or packaging consistent with a drug transaction. The courts have held that these kinds of observations are insufficient to constitute a reasonable suspicion for a stop. See, e.g., M.J.S. v. State, 624 So.2d 359 (Fla. 2d DCA 1993) (officer did not have reasonable suspicion to stop juvenile simply based on his observation of the juvenile and two others in a high-drug area in the evening, leaning into the window of a stopped car and attempting to leave upon seeing the officer when he did not see any money or drugs transferred between the juvenile and occupant of the car); Nesmith v. State, 616 So.2d 170 (Fla. 2d DCA 1993) (officer's observation of defendant in a known drug area, leaning into a parked car with unidentified object in his hand and his flight when the officer approached did not provide the officer with a reasonable suspicion of criminal activity needed to justify a stop); Shackelford v. State, 579 So.2d 306 (Fla. 2d DCA 1991) (officer's observation of the defendant leaning into a window of a car in an area known for drug sales did not create a reasonable suspicion of criminal activity); Huntley v. State, 575 So.2d 285 (Fla. 5th DCA 1991) (officer who observed defendant in a high-drug area picking something up from a young black male's hand but who saw neither drugs nor money did not have a founded suspicion to detain defendant); Dames v. State, 566 So.2d 51 (Fla. 1st DCA 1990) (officer's stop of defendant was not warranted by his observation of the defendant in a high-crime district leaning into the window of a stopped car and the defendant's rapidly walking away upon seeing another officer approach).
Rather, the state relied on Paul's consent to the search of his car. In order to rely upon consent to justify a search after an unjustified stop of an automobile, the state has a heavy burden to prove that the consent was in fact freely and voluntarily given. Norman v. State, 379 So.2d 643 (Fla. 1980). The voluntariness of a defendant's consent to search is to be determined from the totality of the circumstances. West v. State, 588 So.2d 248 (Fla. 4th DCA 1991). When consent is obtained after illegal police activity such as an illegal stop or arrest, the unlawful police action presumptively taints and renders involuntary any consent to search. Norman; West.
*539 However, consent will be held voluntary if there is clear and convincing proof there was an unequivocal break in the chain of illegality (in the illegal stop) sufficient to dissipate the taint of the prior illegal police action. Norman; State v. Boyd, 615 So.2d 786 (Fla. 2d DCA 1993); West; Reed v. State, 577 So.2d 1362 (Fla. 2d DCA 1991). The taint may be dissipated when the defendant is advised of his constitutional right to refuse consent to search and nonetheless voluntarily does so. Boyd; Gonzalez v. State, 578 So.2d 729 (Fla. 3d DCA 1991); State v. Simm, 558 So.2d 110 (Fla. 3d DCA 1990); Windes v. State, 547 So.2d 346 (Fla. 3d DCA 1989); State v. Gribeiro, 513 So.2d 1323 (Fla. 3d DCA 1987); State v. Martinez, 459 So.2d 1062 (Fla. 3d DCA 1984); State v. Howard, 394 So.2d 440 (Fla. 3d DCA 1981); State v. Champion, 383 So.2d 984 (Fla. 4th DCA 1980).
In this case, the trial judge was the fact finder. He heard the police officer's testimony, which was the sole evidence presented. But, the judge did not have to believe the police officer's testimony. Obviously, he did not, since he suppressed the evidence found in Paul's car. Being "opened-minded" has nothing to do with the decision in this case.
This case is similar to having a jury disbelieve the state's evidence in a criminal case. Even though the state's witnesses are uncontradicted, a jury does not have to accept and believe them.[3] Such a rule is applicable here. The trial judge could well have found the initial stop was illegal, based on the police officer's testimony; and that the state failed to carry its burden of proof to show there was an unequivocal break in the chain of illegality, because the trial judge did not believe the police officer's testimony that Paul freely consented.
AFFIRMED.
GOSHORN, J., concurs specially with opinion.
THOMPSON, J., dissents with opinion.
GOSHORN, Judge, concurring specially.
I concur in Judge Sharp's analysis and result because the trial judge's ruling comes to us clothed with the presumption of correctness. Smith v. State, 378 So.2d 281 (Fla. 1979); State v. Hardy, 610 So.2d 38 (Fla. 5th DCA 1992), review denied, 621 So.2d 433 (Fla. 1993). We should not reweigh the evidence and substitute our factual findings for that of the trial judge. State v. Smith, 632 So.2d 1086 (Fla. 5th DCA 1994).
THOMPSON, Judge.
I respectfully dissent. Although it is good to be open-minded, in a case like this, I do not want to be so open-minded that obvious facts are ignored. The majority opinion ignores obvious facts. I would reverse the order granting the motion to suppress for two reasons. First, I think the stop was a proper Terry stop and second, even if the stop was improper, the appellant consented to the search and thus dissipated any taint of an improper search.
Deputy Scott Stoudt of the Putnam County Sheriff's Office, the only witness to testify at the suppression hearing, testified that he was "aggressively patrolling" an area within his zone known for drug sales. Deputy Stoudt saw Paul's vehicle and observed it for a short time because Paul was a white male driving in an African-American community at 8:57 in the evening. He could tell there were five or more African-American males with their heads and hands inside the driver's window. This activity was familiar to Deputy Stoudt. Deputy Stoudt, prior to working as a patrol deputy, had participated in undercover drug buys. He testified, at the suppression hearing, that when he worked undercover, he would drive his private vehicle into a suspected drug area and several "suspects" would *540 come up to his car and put their heads and hands in his windows. They would argue among themselves and attempt to outbid the other to make the sale.
When Deputy Stoudt approached the intersection and saw Paul's car, he suspected that a drug sale was ongoing. He admitted he could not see inside the vehicle, because there were too many people, and he never saw anything exchange hands. He also testified that he did not know any of the males outside of the car and he did not know Paul before that evening. As he approached Paul's vehicle, the males outside the car ran in different directions. Paul's vehicle pulled off and passed Stoudt in the opposite direction. A short time later, Stoudt stopped Paul's vehicle using his blue lights. Stoudt "ran" Paul's tag before Paul got out of the vehicle to see if there were any outstanding warrants for the vehicle.
As Stoudt approached Paul's vehicle, Paul got out of his vehicle with his driver's license in his hand and started to give reasons why he was in the area. Stoudt took the license, examined it and gave it back to Paul. The reasons Paul gave did not match what Stoudt had observed. Paul said he had picked someone up from a shopping center and was giving him a lift home. Deputy Stoudt never saw anyone in Paul's car, nor did he see anyone get out of his car. Stoudt told Paul why he was stopped: because he saw the males running from his vehicle and because he suspected Paul was buying drugs. He asked Paul for consent to search his car. At this point, Paul was not under arrest and no traffic citations were issued for any offense. Paul was told he did not have to consent to the search. Paul agreed to the search and Stoudt found a piece of rock cocaine between the two front seats. Paul was arrested and charged with possession of cocaine.
The initial stop of Paul's vehicle was based upon a founded suspicion that a crime may have been committed or about to be committed. It was an investigatory stop permissible under federal and state law. See Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); § 901.151, Fla. Stat. (1991) (Florida's stop and frisk law). Stoudt presented a "well-founded, articulable suspicion of criminal activity" during his testimony. Popple v. State, 626 So.2d 185, 186 (Fla. 1993). Stoudt testified that the behavior he observed was consistent with his experience as an undercover law enforcement officer that a drug deal was in progress. His testimony, unrefuted by Paul, was a sufficient basis for Stoudt to stop Paul's car. See State v. Brown, 616 So.2d 124 (Fla. 2nd DCA 1993); State v. Hunt, 391 So.2d 760, 761 (Fla. 5th DCA 1980). Based upon the totality of the circumstances presented by an experienced law enforcement officer, the state has shown a founded suspicion for the stop. Batie v. State, 593 So.2d 1167 (Fla. 1st DCA 1992); Murphy v. State, 512 So.2d 1006 (Fla. 4th DCA 1987), review denied, 520 So.2d 585 (Fla. 1988).
I realize that several of our sister courts have reached different conclusions concerning this type of behavior and how it can be characterized. The majority opinion has listed several of them. They are merely persuasive and not binding upon us, although binding upon trial courts. Pardo v. State, 596 So.2d 665 (Fla. 1992). I suggest that we recognize that this type of behavior is street level drug activity. When an officer testifies who is well trained and who has had experience in street level drug sales, and the officer's testimony is uncontroverted and supported by the evidence, it should be accepted as true. The officer's testimony in this case is based upon his experience as an undercover officer buying drugs. He testified he had made a drug arrest before in this area. He is knowledgeable and he is experienced. He should be believed.
As our society has changed, we have changed the laws and the interpretation of the laws to recognize the changes. An obvious example is the changes in the area of search and seizure brought about because of the growing use of automobiles. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The United States Supreme Court has also authorized the use of drug courier profiles at airports. See Florida v. Rodriguez, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). Allowing these exceptions *541 based upon changes in our society, yet excluding street level drug sales, even though we have enough empirical evidence to develop a drug profile, as valid as others that we use, is being too open minded. Since the initial stop did not violate Paul's Fourth Amendment rights, the next point of inquiry is Paul's consent to that search. Was it coerced by Deputy Stoudt?
The state has the burden of showing that consent was freely and voluntarily given. Norman v. State, 379 So.2d 643 (Fla. 1980). The voluntariness of a consent to search is to be determined from the totality of the circumstances. West v. State, 588 So.2d 248 (Fla. 4th DCA 1991). The state showed consent with Deputy Stoudt's testimony. The facts show that Paul was stopped for only a short period of time. He appeared to be clear-headed and not under the influence of drugs or alcohol. Deputy Stoudt never pulled his handgun, never used words to threaten Paul and expressly told Paul that he did not have to consent to the search. There is no evidence of any kind of coercive behavior by Deputy Stoudt. Based upon the totality of the circumstances, the search was valid. See Hosey v. State, 627 So.2d 1289, 1291 (Fla. 5th DCA 1993) (citing Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)).
Paul argues that the search was tainted and anything flowing from the search must be suppressed. Citing Norman, Paul alleges that the State must show by clear and convincing evidence that the consent was not a fruit of the violation. Norman, 379 So.2d at 646-47. I agree. Here the unrefuted testimony of the deputy that Paul freely and voluntarily consented to a search is sufficient to dissipate any taint of an improper search. The state has met its burden by clear and convincing evidence. See State v. Simm, 558 So.2d 110 (Fla. 3d DCA 1990) (where only evidence before the court was the testimony of police officers that the defendant voluntarily consented to a search of his vehicle after being advised of his right to refuse, evidence seized was admissible even though initial stop of the defendant was illegal); State v. Martinez, 459 So.2d 1062 (Fla. 3d DCA 1984) (where the defendant was advised by the police of the right to withhold consent to a search of her shoulderbag, the taint of the initial unlawful stop was dissipated and her otherwise free and voluntary consent to search rendered the search lawful). I am sensitive to the fact that my view of the evidence and the street level profile that I advocate is subject to abuse by law enforcement to the detriment of minority members of the community, but this is no more true within the street level profile than it is with any other tool law enforcement uses. All are subject to abuse. What is abuse is to allow the decent and law abiding members of the community where this behavior occurs to be held captive in their homes as these young drug dealers control their streets. We have enough empirical data to recognize criminal behavior in our streets and to allow it to be identified as "founded suspicion." See Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.
I am reminded of the first time I was told that I could be too "open minded." I had returned from the University of Florida after spending my first quarter there. I visited my grandmother while she was in the yard attending her flowers. After greeting her, I began to pontificate on some ponderous point. Pedantically, I pursued my position until I was exhausted. She looked at me as I concluded that I was open minded. She looked straight in my eyes and said "You know, sometimes you can be so open minded, your brains can fall out." The facts were obvious to for Deputy Stoudt in this case, and the facts are obvious to any other knowledgeable person as to what Paul was doing. I am open minded about improper search and seizure techniques used coercively by the police, but I am not too open minded. Because the trial judge did not give reasons for his decision to suppress the evidence, I would reverse and remand.
NOTES
[1] We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.140(c)(1)(B).
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] See Bouler v. State, 389 So.2d 1197 (Fla. 5th DCA 1980); Richert v. State, 338 So.2d 40 (Fla. 4th DCA 1976), cert. denied, 346 So.2d 1250 (Fla. 1977); United States v. Trull, 581 F.2d 551 (5th Cir.1978); Tyler v. Beto, 391 F.2d 993 (5th Cir.1968), cert. denied, 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574 (1969); Fast v. Wainwright, 310 F. Supp. 404 (S.D.Fla. 1970), affirmed, 439 F.2d 1162 (5th Cir.1971). See also Rodriquez v. State, 436 So.2d 219 (Fla. 3d DCA 1983), rev. denied, 447 So.2d 888 (Fla. 1984); State v. Garcia, 431 So.2d 651 (Fla. 3d DCA 1983); Bowles v. State, 381 So.2d 326 (Fla. 5th DCA 1980).