GRIFFIN, J.
Roger C. Cassidy [“Cassidy”] appeals the trial court’s denial of his petition for writ of habeas corpus to file a belated 8.850 motion following an evidentiary hearing. Cassidy claims he retained now-deceased attorney, Jack Edmund, to file a 3.850 motion for post-conviction relief on his behalf. Cassidy contends that, in dismissing the motion, the trial court relied on improper evidence to conclude that he had not retained Attorney Edmund, as he claimed.
In June of 1998, the State charged Cas-sidy by information in cases 98-1864-CFA, 98-01957-CFA, and 98-2148-CFA. Cassi-dy entered pleas of nolo contendere to the charges in each case. The trial court adjudicated Cassidy guilty and sentenced him to a term of confinement in the Department of Corrections, followed by a term of probation. Later, while on probation, Cas-sidy committed a new law violation, which resulted in revocation of probation. Cassi-dy was convicted on the new law violation and sentenced to life imprisonment as a prison releasee reoffender.
Years later, on December 11, 2007, Cas-sidy filed a petition for writ of habeas corpus, seeking a belated 3.850 motion for post-conviction relief. In his petition, Cas-sidy alleged in pertinent part:
3. Petitioner contacted Mr. Jack Edmund, Esquire, whereby requesting said counsel to file a timely motion for post-conviction relief under Rule 3.850, of Florida’s Rules of Criminal Procedure.
4. Mr. Jack Edmund, Esquire, agreed to file a timely Rule 3.850 motion for postconviction relief. However, said counsel never filed the motion as agreed.
The State responded, asserting that Cassidy’s petition was barred by the doctrine of laches and alleging in pertinent part:
2. The defendant has conveniently alleged and named an attorney, Jack Edmund, who is now deceased as the individual he claims to have retained to file a post-conviction motion years ago. In the meantime, the defendant was convicted of Robbery With a Deadly Weapon and sentenced to life imprisonment as a prison releasee reoffender in Seminole County Case No. 01-2666-CFA, unsuccessfully taken an appeal therefrom and then filed a motion for post-conviction *622 relief which was denied on February 25, 2005.
The trial court conducted an evidentiary hearing on Cassidy’s petition, during which it heard testimony from several witnesses.
Cassidy testified that his friend, Larry Pool, sent him a letter in late 1998 or early 1999, in which he informed Cassidy that he had hired Attorney Edmund for purposes of a 3.850 motion for post-conviction relief on Cassidy’s behalf. Cassidy also testified that he received notice through the mail from Attorney Edmund “that [Attorney Edmund] had been retained by Mr. Pool to file a Rule 3.850 motion for [him] in relation to the three cases that [he] was in prison for.” He later received notice from Attorney Edmund that the 3.850 motion had been denied and that no appeal had been taken. He retained none of those documents.
During cross-examination, Cassidy admitted to “about twenty” felony convictions. Cassidy also confirmed that his convictions and sentences in the three cases had resulted from an agreed upon plea deal with the State.
Pagan Taylor [“Taylor”] also testified during the evidentiary hearing. Taylor testified that Attorney Edmund was her father and that he had passed away in March 2002. She explained that she had been Attorney Edmund’s legal assistant in the late nineties and continued in this position until his death. Taylor then testified:
Q. Did you maintain all of the records in the office of Mr. Edmund?
A. Yes, I did.
Q. Were you familiar with the manner in which those records were kept?
A. Yes, sir.
Q. Now, are all of the records of all of the files still in existence for all of his clients?
A. Yes, sir. We do have a journal.
Q. Okay. Now, the journal that you spoke of, what does that journal consist of?
A. We give it a file number, the date it was opened, the name, and sometimes a brief description of what kind of a case it was.
Q. Was it your practice in Mr. Edmund’s office to ever represent or be retained by any client without that client’s name appearing in the journal that you spoke of?
A. No, sir.
Q. What sort of practice did Mr. Edmund have?
A. He was a criminal attorney. He did federal law and criminal law.
Q. Are you familiar with what is known as a 3.850 motion?
A. Yes, sir, I am.
Q. And did Mr. Edmund practice that sort of law?
A. No, sir, he did not.
Q. Have you reviewed, at my request, all of the journal entries, all of your records relating to all clients that were represented by Mr. Edmund from 1998, '99, 2000, and 2001 to determine whether or not there ever was a client by the name of Roger Cassidy who was represented by Mr. Edmund?
[CASSIDY’S ATTORNEY]: Objection. Hearsay.
THE COURT: Overruled.
THE WITNESS: Yes, sir. I have reviewed the records, and, no, sir, there is no record of a Roger Cassidy.
BY [THE STATE]:
Q. Would Mr. Edmund had [sic] ever written letters to individuals in — strike that.
If Mr. Edmund had represented any client by the name of Roger Cassidy, would his name, Mr. Cassidy’s name, *623 appear in those journal entries during that time period?
[CASSIDY’S ATTORNEY]: Objection.
THE WITNESS: Yes, it would have.
[CASSIDY’S ATTORNEY]: Speculation.
THE COURT: Overruled.
BY [THE STATE]:
Q. Has it come to your attention that other individuals, other inmates, have used — have made the same sort of claim that Mr. Edmund had represented or he had been retained to represent them in a post-conviction relief motion?
[CASSIDY’S ATTORNEY]: Objection. Relevance.
THE WITNESS: Yes, sir, I have.
THE COURT: Overruled.
BY [THE STATE]:
Q. Have you, actually, had to go to court and testify before relating to this?
A. Actually, I have not, actually, gone to court. I’ve given depositions, but the cases are usually or have been, actually, dismissed before it got that far.
After the evidentiary hearing, the trial court entered an order denying Cassidy’s petition for writ of habeas corpus, stating in pertinent part:
Having weighed the credibility of the testimony at the evidentiary hearing, the Court accepts the facts as testified to by Ms. Taylor. As such, the Court finds that ... [Cassidy] did not retain Mr. Edmund to file a post conviction motion. Therefore, ... [Cassidy] is not entitled to file an untimely motion for post conviction relief. See Steele v. Kehoe, 747 So.2d 931 (Fla.1999)[.]
On appeal, Cassidy contends that the testimony of Taylor was inadmissible as hearsay or speculation or was irrelevant. He further claims that without this evidence, the trial court was obliged to accept his testimony and allow the belated 3.850 motion. We disagree. The bulk of Taylor’s testimony was neither speculative nor hearsay and fully supports the trial judge’s finding. Moreover, even if Cassidy’s testimony had been uncontroverted, the trial court was not obliged to accept the testimony if it did not believe Cassidy. See Dep’t of Highway Safety v. Dean, 662 So.2d 371, 372 (Fla. 5th DCA 1995); State v. Paul, 638 So.2d 537, 539 (Fla. 5th DCA 1994).
AFFIRMED.
TORPY and LAWSON, JJ., concur.