654 So.2d 229 (1995)
Ron Christopher COOPER, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1349.
District Court of Appeal of Florida, First District.
April 25, 1995.
*230 Nancy A. Daniels, Public Defender; David P. Gauldin, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Douglas Gurnic, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Ron Christopher Cooper challenges an order withholding adjudication and imposing probation for possession of cocaine, following his plea of nolo contendere. Mr. Cooper expressly reserved the right to appeal the trial court's denial of his motion to suppress cocaine seized by police. He contends that seizure of the cocaine was the result of an illegally prolonged detention and a coercive search. Because the prosecution's efforts to show otherwise did not meet constitutional standards, we reverse the trial court's denial of appellant's motion to suppress.
Viewing the facts in the light most favorable to the State, Young v. State, 579 So.2d 721 (Fla. 1991), Tommy Gore, a Quincy policeman, stopped Mr. Cooper at approximately midnight on August 4, 1993, on suspicion of driving under the influence of alcohol. Officer Gore seized a handgun he spotted lying in appellant's car and put it in the trunk of the patrol car. Ordered to get out of his car and into the back seat of the patrol car, appellant complied. After another policeman, Sergeant Sheldon, had arrived in a second patrol car, a check on the handgun revealed it was registered to appellant.
Officer Gore testified at the suppression hearing that, after determining Mr. Cooper was not intoxicated, he told him he was free to go; and that he returned his driver's license, but not his gun, which he placed on the hood of one of the patrol cars. Officer Gore also testified, however, that he then asked appellant if he would permit a search of his vehicle; and that, when appellant replied "No," Officer Gore informed him that a "K-9 unit" could be summoned, and that dogs could be brought to sniff for the presence of drugs.
Mr. Cooper thereupon walked to his car and, despite his earlier refusal to allow a search of its contents, began removing items from the back seat, placing them in a bag on the ground. Sergeant Sheldon saw appellant place a matchbox in the bag. Asked about the matchbox, appellant denied its existence. Allegedly with appellant's consent, Sergeant Sheldon then retrieved the matchbox from inside a shoe in the bag and handed it to officer Gore who opened it, discovering crack cocaine.
On these facts, we find an unlawful search. Notwithstanding the lawfulness of the initial stop and investigatory seizure of appellant's gun, appellant was illegally detained at the time of the search. See Rouse v. State, 643 So.2d 696, 697-98 (Fla. 1st DCA 1994); Joseph v. State, 588 So.2d 1014 (Fla. 2d DCA 1991). At no time was the encounter consensual in nature. Once the officers determined that Mr. Cooper was not intoxicated and that appellant's possession of the firearm was not illegal, there was no longer *231 any lawful reason not to let him go. See Reynolds v. State, 592 So.2d 1082 (Fla. 1992); Cresswell v. State, 564 So.2d 480, 481 (Fla. 1990); Blackmon v. State, 570 So.2d 1074, 1075 (Fla. 1st DCA 1990).
At the suppression hearing, the State argued, "The defendant ... had the choice to leave and leave his property behind, or even ask the officers to return the gun." The trial court committed clear error in accepting this argument. The request to search the vehicle, after any reasonable suspicion of wrongdoing had been dispelled, coupled with the threat to prevent appellant's departure until dogs could be brought to the scene, amounted to an illegal detention. See Satterfield v. State, 609 So.2d 157 (Fla. 2d DCA 1992); Castillo v. State, 536 So.2d 1134, 1136-37 (Fla. 2d DCA 1988). In the circumstances, no reasonable person would have believed himself "free to leave." Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988).
Appellant's acquiescence in the search of his personal effects was the fruit of illegal police conduct. See Rouse, 643 So.2d at 698. It was incumbent upon the State to show by clear and convincing evidence that any consent to search the bag, the shoe, or the matchbox was voluntary and not the product of appellant's illegally prolonged detention.
A consent to search obtained after illegal police activity ... is presumptively tainted and rendered involuntary and "will be held voluntary only if there is clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior illegal police action." Norman v. State, 379 So.2d 643, 647 (Fla. 1980)... .
Furthermore, where there has been illegal police activity, the state must prove by clear and convincing evidence that an individual's consent was freely and voluntarily given and was not merely a submission or acquiescence to official authority. Reynolds v. State, 592 So.2d 1082 (Fla. 1992).
Salem v. State, 645 So.2d 1023, 1026 (Fla. 2d DCA 1994). Here, as in Salem, there was sufficient proof of "no such unequivocal break between the stop and the consent. Satterfield v. State, 609 So.2d 157 (Fla. 2d DCA 1992); Reed v. State, 577 So.2d 1362 (Fla. 2d DCA 1991)." Salem, id. The present case is clearly distinguishable from Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), where the Court found that bus passengers occupied their seats, not as a result of official threats or because police had failed to return their personal property, but because the bus was scheduled to depart.
The denial of the motion to suppress is reversed and the case is remanded with directions to discharge appellant.
MICKLE and BENTON, JJ., concur.
WEBSTER, J., dissents with opinion.
WEBSTER, Judge, dissenting.
The only evidence presented to the trial court on the motion to suppress was the testimony of Officer Gore and Sergeant Sheldon. Notwithstanding the majority's contrary implication, there was no dispute about the fact that appellant consented to the search of the shoe and the matchbox. The only dispute was with regard to whether that consent had been voluntary. The majority concludes that the consent was not voluntary because "appellant was illegally detained [or seized] at the time of the search."
Of course, the state was obliged to establish that appellant's consent was voluntary, rather than mere submission to authority. E.g., Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). In a case such as this, where it is asserted that the consent was not voluntary because the defendant had been seized, the test is whether, "consider[ing] all the circumstances surrounding the encounter[,] ... the police conduct would have communicated to a reasonable [innocent] person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991). This test poses a question of fact, and the trial court's answer to that question "should not be disturbed on appeal unless ... clearly erroneous." *232 Davis v. State, 594 So.2d 264, 266 (Fla. 1992)
The majority does not suggest that the trial court failed to apply the proper test, and the record would not support such a conclusion had they done so. Therefore, it follows that the majority's decision to reverse must be based upon the implicit conclusion that the trial court's finding that appellant's consent was voluntary is "clearly erroneous." I am unable to join such a conclusion.
The majority finds no fault with either the initial stop or the seizure of the gun. The undisputed evidence is to the effect that, having satisfied himself that appellant was not intoxicated and that the gun had not been stolen, Officer Gore retrieved the gun from the trunk of his patrol car and placed it on the hood, and returned appellant's driver's license, telling appellant that he was free to leave. There is nothing to suggest that, at that point, appellant was not, in fact, free to pick up his gun, get into his car and leave. Apparently as appellant was about to leave, Officer Gore asked if he might search appellant's car. When appellant responded that he would not permit a search, Officer Gore did, somewhat inexplicably, say that he "could have a dog come out and walk around his vehicle." (Emphasis added.) However, he did not say that he would request that a canine unit be dispatched; and he neither ordered nor asked appellant to remain until a canine unit could be summoned. Also somewhat inexplicably, appellant responded by returning to his vehicle, removing items from the back seat and putting those items in a bag.
While I concede that some of the acts established by the evidence are a bit puzzling, I am not prepared to say that, considering all of the circumstances as established by the evidence, the trial court's finding that appellant's subsequent consent to the search of the shoe and the matchbox was voluntary was "clearly erroneous." See, e.g., United States v. Garcia, 890 F.2d 355 (11th Cir.1989) (considering all circumstances, consent to search house voluntary, notwithstanding officers' statement that, absent consent, they would have to secure house and attempt to obtain warrant). Given the evidence, I believe that a finder of fact might, with propriety, have decided the question either way. Had I been the trier of fact, my decision might well have been contrary to that of the trial court. That, however, is not the standard of review. We may not "reweigh the evidence and substitute our factual findings for that of the trial judge." State v. Smith, 632 So.2d 1086, 1088 (5th DCA) (en banc), cert. denied, ___ U.S. ___, 115 S.Ct. 290, 130 L.Ed.2d 205 (1994). Because it appears to me that the majority has done precisely that, I dissent.