661 So.2d 937 (1995)
STATE of Florida, Appellant,
v.
Gene HOPKINS and Bruce English, Appellees.
No. 94-1457.
District Court of Appeal of Florida, Fifth District.
October 20, 1995.
Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Turner and Mark S. Dunn, Assistant Attorney Generals, Daytona Beach, for Appellant.
James Dickson Crock of James Dickson Crock, P.A., Daytona Beach, for Appellees.
THOMPSON, Judge.
The state of Florida appeals an order granting a motion to suppress filed by Gene Hopkins and Bruce English. The motion sought to suppress physical evidence seized by sheriff's deputies, as well as statements made by Hopkins and English, at the time of their arrest. On appeal, the state argues that the trial court erred when it determined that there was no founded suspicion for the stop of Hopkins and English and the seizure of marijuana in their possession. We affirm.
Members of the Volusia County Sheriff's Office SWAT team went to the home of Michael Miller to arrest him with a warrant based on information that Miller was involved in the drug trade. The deputies had no other warrants to serve. As the deputies approached Miller's property, Miller saw them and fled in a truck. In addition to wearing t-shirts with the words "Sheriff" on the front and "Sheriff's Drug Unit" on the back, the deputies shouted their identities. Several deputy sheriffs followed Miller. Shortly after Miller left, deputies noticed a dark-colored Camaro leave Miller's yard. The Camaro drove in the opposite direction of Miller and never drove faster than 25 miles per hour.
At that time, the deputies could not identify the occupants of the Camaro, but they knew that Miller was not in the car. The deputies had no reason to follow the Camaro, other than their "gut feeling" that the car might contain drugs. The deputies suspected that Miller might have given drugs to the occupants of the Camaro for disposal. Deputies followed sixty or seventy feet behind the *938 vehicle until it pulled into a private driveway down the street from Miller's residence. When the car stopped, the deputies stopped behind the car so that it could not leave. Hopkins got out of the passenger's side and was ordered to stop by the deputies, who had gotten out of their car with handguns drawn. One of the deputies shouted, "Halt, sheriff's department." Hopkins hesitated, dropped two green garbage bags, and then went into the backyard of the residence. He returned a few moments later and was secured on the ground. English was arrested at gunpoint as he sat behind the wheel of the Camaro. The two deputies who arrested Hopkins and English testified that they had no information that Hopkins and English had committed or were about to commit a crime.
We agree with the trial court: there was no founded suspicion for the stop of the vehicle. A founded suspicion is one based upon facts and circumstances observed by the officer and interpreted in light of his knowledge and experience. The officer must be able to articulate a basis for his suspicion that a person has committed, is committing, or is about to commit a crime. Bryant v. State, 577 So.2d 1372, 1374 (Fla. 1st DCA 1991). Such a suspicion cannot be based upon a mere hunch or guess. Tamer v. State, 484 So.2d 583 (Fla. 1986). In this case, the deputies admitted that the only reason they were present at Miller's house was to arrest Miller. They observed no drug transactions that evening and had no knowledge of any crime committed by Hopkins and English. Absent founded suspicion that Hopkins and English had committed, were committing, or were about to commit a crime, the deputies lawfully could not stop the Camaro. Bastien v. State, 522 So.2d 550 (Fla. 5th DCA 1988). Because the stop was improper, any seizure of drugs or contraband from Hopkins and English also was invalid. Taylor v. State, 658 So.2d 173 (Fla. 5th DCA 1995); State v. Paul, 638 So.2d 537 (Fla. 5th DCA 1994), review denied, 654 So.2d 131 (Fla. 1995). Accordingly, the motion to suppress was properly granted.
AFFIRMED.
W. SHARP, J., concurs.
COBB, J., dissents with opinion.
COBB, Judge, dissenting.
The majority opinion fails to focus on the critical question  i.e., was Hopkins stopped prior to abandoning the two green garbage bags? As shown by the majority's delineation of the facts, the answer to that question is No.
According to the trial court's findings of fact: English remained in the driver's side of the car when the police approached the vehicle. Hopkins got out of the vehicle, was ordered by the police to stop, dropped the two garbage bags containing marijuana, then turned and ran to the backyard, and moments later he returned and surrendered. A small quantity of drugs was found in the backyard. Under the driver's seat, another bag containing marijuana was discovered. The trial court suppressed all the evidence, including the bags discarded by Hopkins, finding they had been dropped only after a show of authority. There was no finding that the police ever stopped the Camaro vehicle  and the facts are clear they did not.
Even absent a founded suspicion for a stop, where contraband is abandoned by a suspect, its retrieval and use criminally against that suspect is not constitutionally prohibited. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). In Hodari, a group of youths who were under no suspicion ran when a police car passed. The police pursued and during the chase, Hodari, one of the youths, discarded a rock of cocaine. Hodari was apprehended and when charged with a narcotics offense, challenged the admissibility of the cocaine. Admissibility turned on the question of when the police seized Hodari  at the moment the chase began or at the time he was apprehended. Justice Scalia, writing for the Court, stated that an arrest may transpire in one of two ways: "An arrest requires either physical force ... or, where that is absent, submission to the assertion of authority." 499 U.S. at 626, 111 S.Ct. at 1551. The Court explained that, absent physical force, a seizure is not effected until the subject has submitted. Id. Hodari involved the second *939 aspect and because the defendant had not submitted, he had not been seized at the time he abandoned the contraband.
Clark v. State, 648 So.2d 848 (Fla. 4th DCA 1995), provides a good illustration of the use of physical force alternative. In Clark, the police lacked a founded suspicion to stop the defendant. The question was whether in a chase of the defendant by the police, the defendant abandoned the contraband (drugs). The facts were that the defendant was observed by police huddled with others in an area known for drug activity. As a police officer approached in his patrol car, the group scattered and the officer chased the defendant who had jumped on a bicycle. To stop the defendant, the officer opened his car door just as the defendant rode by, causing the defendant to collide with the door. As he fell, the defendant threw the bag containing cocaine to the side. Rejecting the state's contention that the drugs had been abandoned prior to the stop, the court stated:
[W]e hold that he was seized prior to dropping the drugs. A seizure involves either the application of physical force or the submission to an officer's show of authority. California v. Hodari D., 499 U.S. 621, 625, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690, 697 (1991). The officer applied a show of force by opening his [patrol car] door so that appellant would hit it and fall off his bicycle. The officer admitted that this was intentional. Here, the officer physically stopped the appellant with his car door. The state's argument that the officer has to touch appellant with his hands before a stop occurs is meritless in this context.
648 So.2d at 850.
Hollinger v. State, 620 So.2d 1242 (Fla. 1993), illustrates a submission to an assertion of authority. In Hollinger, members of a sheriff's SWAT Team were conducting a drug sweep when they pulled into a parking lot and approached a group of people. One of the officers noticed the defendant put his hand behind his back and drop a tissue. The officer picked up the tissue and found it contained rocks of cocaine. The trial court granted the motion to suppress finding that a reasonable person under the circumstances would have believed he was not to move and that therefore the defendant had submitted to a show of authority. The supreme court agreed.
The question here is: when was Hopkins seized? The car in which he was a passenger was not stopped by the police. No physical force was used against Hopkins at or before the time he threw down the bags containing drugs. If he was seized at the time he threw down the drugs, it would have to be because he submitted to the assertion of authority. It is not enough that the officer assert his authority: under Hodari, absent force, a seizure is not effected until the suspect has submitted. See United States v. Zapata, 18 F.3d 971 (1st Cir.1994). As stated in Hollinger:

Hodari draws a clear distinction between those who yield to the authority of the police and those who flee. A person who flees from a show of authority has not been seized, while a person who remains in place and submissive to the show of authority has been seized. Therefore, if a person submits to an officer's show of authority and does not attempt to escape, then a seizure has occurred and dropped contraband must be suppressed if the seizure was illegal.
620 So.2d at 1243.
In the instant case, the police asserted their authority by ordering English and Hopkins to stop, but Hopkins did not submit to this assertion. Instead, he hesitated, dropped the two bags and ran to the backyard of the residence. He returned a few moments later. It was only upon his return that Hopkins submitted to the officer's assertion of authority. The contraband thrown down by Hopkins was abandoned under Hodari and should not have been suppressed. Furthermore, once the police examined these abandoned bags and determined they contained marijuana, the police had probable cause to search the vehicle from which Hopkins had fled with the bags. It was in connection with this lawful search that the bag containing marijuana was discovered on the *940 driver's side of the vehicle. Accordingly, I would reverse the suppression order.