674 So.2d 896 (1996)
Andre TURNER, Appellant,
v.
STATE of Florida, Appellee.
No. 95-839.
District Court of Appeal of Florida, Fifth District.
May 31, 1996.
James B. Gibson, Public Defender, and Lyle Hitchens, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ann M. Childs, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, Judge.
Andre Turner[1] appeals the trial court's order denying his motion to suppress evidence. Turner alleges that the evidence was *897 seized during an illegal investigatory stop. We reverse.
Turner was with four friends when they were approached by two uniformed deputies. The deputies had been dispatched to investigate a report that people were arguing over drugs. As the deputies approached the group, Deputy Duncan asked questions of the group and patted each of the males down for his safety. There was a female with the group and she was not patted down. Duncan testified that he had recovered weapons from people at that location in the past and he was concerned about his physical safety. Duncan patted down Turner and felt nothing in his pockets that could be a weapon. Duncan then asked Turner if he would consent to a search for drugs and weapons. Duncan testified that Turner said yes. Turner pulled some items from his pocket, but, sensing there were other items in Turner's pocket, Duncan reached into Turner's pocket and removed 3 or 4 individually wrapped pieces of crack cocaine. Turner ran but was apprehended.
Turner testified that the deputies approached the group and ordered them to put their hands on the patrol car and empty their pockets. Turner stated that he did not feel free to leave because he thought he might be arrested. Turner further testified that Duncan then reached into his pocket without permission. Turner was charged with possession of cocaine[2] and resisting arrest without violence.[3] Turner entered a plea of nolo contendere to the charges, reserving his right to appeal the denial of his motion to suppress.
All citizens should expect reasonable contact with the police. Even in a democratic society, law enforcement officers have the right to initiate questioning in a public place. Police may even request a citizen to consent to a search of his or her person or belongings. Florida v. Bostick, 501 U.S. 429, 435, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). As long as the request is not coerced and the citizen knows he may refuse, the request does not violate the citizen's constitutional rights. Id. Vigilant law enforcement is part of society's need to protect itself and does not violate a citizen's constitutionally protected rights. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983); State v. Walden, 464 So.2d 691 (Fla. 5th DCA 1985). However, to make a valid investigatory stop, the police must have a well-founded suspicion that criminal activity is afoot. See State v. Simons, 549 So.2d 785, 786 (Fla. 2d DCA 1989).
In this case, the deputies had the right to question Turner and his friends. However, when the deputies initially patted down Turner, they seized his person. Woodson v. State, 579 So.2d 381 (Fla. 5th DCA 1991). In order to seize Turner's person to pat him down for weapons, the deputies needed a well-founded suspicion that Turner was involved in criminal activity. Simons, 549 So.2d at 786. Here, there was none. The deputies had received a call about argument over drugs. When they arrived, there was no argument and no drugs were visible. Duncan testified he saw no weapons and the only evidence of criminal activity was a nearby automobile with a broken window. From the deputies testimony, no other crimes were being committed and they had no other reason to stop or question Turner or his friends. In fact, they had no description from the phone call who was arguing about drugs. The only reason Duncan searched Turner was his prior experience with others at that location. Duncan believed Turner might be carrying a weapon because he had previously recovered weapons from others at that location. In essence, Duncan had a hunch that Turner might be carrying a weapon.
A hunch alone is not enough for an investigatory search. Smith v. State, 637 So.2d 343, 344 (Fla. 2d DCA 1994) (holding that law enforcement officer must have founded suspicion that person has committed, is committing or about to commit crime before there can be an investigatory stop). The law enforcement officer must be able to articulate reasons for his suspicion. Duncan articulated no reasons that related to Turner. His explanation was that others at that location *898 in the past had weapons. This was insufficient. Hamilton v. State, 597 So.2d 417 (Fla. 2d DCA 1992).
The state argues that even if the initial stop was invalid, the subsequent consent by Turner vitiated the stop. We disagree. A consent to search given after illegal police conduct is presumptively tainted and is deemed involuntary absent "clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action." Norman v. State, 379 So.2d 643, 647 (Fla.1980); Cooper v. State, 654 So.2d 229 (Fla. 1st DCA 1995). In this case, the state did not overcome the presumption of illegality. Compare State v. Paul, 638 So.2d 537 (Fla. 5th DCA 1994), review denied, 654 So.2d 131 (Fla. 1995) (holding that taint of illegal stop may be dissipated when defendant consents to search after being advised of his constitutional right to refuse consent). Accordingly, we reverse the trial court's order granting the motion to suppress.
REVERSED and REMANDED.
PETERSON, C.J., and COBB, J., concur.
NOTES
[1] During the entry of his plea, Turner stated his real name is Robert Lamar Evins.
[2] § 893.13(6)(a), Fla.Stat. (1993).
[3] § 843.02, Fla.Stat. (1993).