687 So.2d 13 (1996)
Elbert BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 95-3030.
District Court of Appeal of Florida, Fifth District.
December 6, 1996.
Rehearing Denied January 28, 1997.
*14 James B. Gibson, Public Defender, and Andrea J. Surette, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and David H. Foxman, Assistant Attorney General, Daytona Beach, for Appellee.
PERRY, B., Associate Judge.
The defendant, Elbert Brown, filed a motion to suppress cocaine, drug paraphernalia, a Lipton iced tea can and certain admissions on the ground that the traffic stop which preceded the search and seizure of the evidence was violative of section 901.151, Florida Statutes (1995) [Stop and Frisk Law]. The trial court entered an order denying the motion to suppress as to the items, but granted it as to the admissions made by the defendant. The defendant entered a plea of nolo contendere to the charge of possession of cocaine, specifically reserving his right to appeal the trial court's partial denial of his motion to suppress. We reverse because the facts do not establish that Deputy Behringer had a founded suspicion of criminal activity before detaining the defendant.
Deputy Scott Behringer of the Brevard County Sheriff's Office testified that on March 3, 1995, he was traveling in a marked patrol vehicle southbound on John Rodes Boulevard at 6:40 p.m., just before dusk, when he observed a pickup truck backing into a wooded area near a canal. Deputy Behringer was suspicious because there had been several previous complaints of individuals dumping trash in this area and problems with burglaries in a nearby housing development. Although Deputy Behringer assumed that the truck was going to dump some materials, he did not see any materials in the back of it. He testified that he "couldn't see any materials in the back of the truck because he was backing into the wood line." He turned his patrol vehicle around and proceeded along the canal about fifty yards. After walking a short distance, he returned to his patrol vehicle and continued further. He subsequently parked on the pathway between the truck and the canal. Upon exiting his patrol vehicle he observed a white male inside of the truck. As Deputy Behringer approached, he saw the defendant bend over in a position as if his hands were between his legs. Just before he arrived at the passenger side of the truck, the defendant looked at him with surprise and "immediately made a furtive movement real quick to the middle of the bench seat." Deputy Behringer testified, "he looked over [to his right] like this and with his hand as [if] to hide something." At that time, Deputy Behringer became alarmed that the defendant might have a weapon.
Concerned for his safety, Deputy Behringer asked the defendant to exit his vehicle and to show him his hands. He asked the defendant why he was there, and the defendant replied that he was just sitting there. As the defendant emerged from the truck, Deputy Behringer saw the top of a Lipton iced tea can between his legs. When the defendant pulled it from between his legs, Deputy Behringer could see that it was partially bent or crushed and that it had several small holes in it. Still concerned for his safety, Deputy *15 Behringer patted down the area, characterized by him as a "vehicle frisk" of the "wing spanned area," in which the defendant had made the furtive movement. The defendant stood against the front of the patrol vehicle approximately four to five feet from his own car during the "vehicle frisk." Based upon his training and experience, the deputy thought the can was a homemade pipe used for smoking crack cocaine or marijuana. Underneath a pair of cutoff jeans, he found a cellular telephone and what appeared to be two pieces of crack cocaine. It was at that point that Deputy Behringer thought he had probable cause to arrest the defendant for possession of cocaine and drug paraphernalia. The defendant told him that he would sign himself into a rehabilitation facility if the deputy would give him a break. Admitting that the substance was his, he explained that he was trying to kick the habit. The defendant had not been advised of his Miranda rights.
It is well established that a law enforcement officer is not permitted to detain an individual without a founded suspicion of criminal activity. Papalas v. State, 645 So.2d 153 (Fla. 1st DCA 1994); Poole v. State, 639 So.2d 96 (Fla. 5th DCA), rev. den., 649 So.2d 234 (Fla.1994); In Interest of J.L., 623 So.2d 860 (Fla. 4th DCA 1993); Hamilton v. State, 612 So.2d 716 (Fla. 2d DCA 1993); Beasley v. State, 604 So.2d 871 (Fla. 2d DCA 1992); Hill v. State, 561 So.2d 1245 (Fla. 2d DCA 1990). A founded suspicion is
one based upon facts and circumstances observed by the officer and interpreted in light of his knowledge and experience. The officer must be able to articulate a basis for his suspicion that a person has committed, is committing, or is about to commit a crime. Bryant v. State, 577 So.2d 1372, 1374 (Fla. 1st DCA 1991). Such a suspicion cannot be based upon a mere hunch or guess. Tamer v. State, 484 So.2d 583 (Fla.1986).
State v. Hopkins, 661 So.2d 937, 938 (Fla. 5th DCA 1995). See also Turner v. State, 674 So.2d 896 (Fla. 5th DCA 1996); Brandin v. State, 669 So.2d 280 (Fla. 1st DCA 1996); State v. Wimbush, 668 So.2d 280 (Fla. 2d DCA 1996).
The facts of this case show simply that the defendant was sitting in a parked truck at dusk in a wooded area known for illegal dumping. These facts do not give rise to a founded suspicion of criminal activity. The record clearly shows that the deputy was merely suspicious that the defendant was going to engage in illegal dumping because he was in an area where such activity had previously occurred. Mere suspicion of criminal activity, however, does not establish a founded suspicion, especially since the defendant's conduct was equally consistent with noncriminal conduct. See Nealy v. State, 652 So.2d 1175 (Fla. 2d DCA 1995) (defendant's acts of standing next to an open Corvette with another black male looking inside a shirt, after which something dropped from defendant's hand onto floor of car and defendant tossed shirt into back of car and closed and locked vehicle consistent with noncriminal activity); Huntley v. State, 575 So.2d 285 (Fla. 5th DCA 1991) (even with benefit of special training, officer's observation of defendant, in a known drug area, standing close to young, black male who was holding out his right palm in a cupped position, picking something up out of male's hand, exchanging a piece of paper and running when approached, at least equally consistent with noncriminal activity).
Nor does the fact that the defendant made a "furtive movement real quick to the middle of the bench seat" justify the ordering of the defendant out of the vehicle and subsequent search of the vehicle. There was absolutely nothing said or done, other than the "furtive movement real quick" to arouse a suspicion of criminal activity or reasonable fear that the defendant posed an immediate threat to the deputy's safety. There was nothing about the defendant's behavior or his location, other than that the area was used for illegal dumping, to serve as a factual basis to detain the defendant or search for a weapon; nor were there any exigent or unusual circumstances which would justify the deputy's actions. A quick movement as if to conceal something is a legally insufficient reason to justify an investigatory stop. Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989).
*16 In sum, merely because the defendant was sitting in a parked truck in a wooded area known for illegal dumping and made a "furtive movement" when approached by the deputy does not give rise to a founded suspicion of criminal activity and further does not justify a detention and search of the vehicle. This detention and search was not authorized by section 901.151.
The trial court's order denying the motion to suppress is reversed and the case remanded for further proceedings.
REVERSED and REMANDED.
GRIFFIN and THOMPSON, JJ., concur.